THE UNITED STATES, PLAINTIFFS IN ERROR V. WALTER
JONES, ADMINISTRATOR OF BENJAMIN G. ORR.

The case was argued by Mr Butler, attorney-general, for the United States; and by Mr Coxe and Mr Jones, for the defendant.

Mr Justice M'LEAN delivered the opinion of the Court.

This case is brought into this court by a writ of error to the circuit court for the District of Columbia.

The action was commenced against B. G. Orr, in his life time, to recover from him a sum of money which remained in his hands as a balance of moneys that had been advanced to him on an army contract. Issue being joined, the cause was submitted to a jury; and the exceptions taken by the plaintiffs, to the ruling of the court on the trial, present the points for consideration.

"The attorney for the United States produced and read to the jury the contract or articles of agreement between George Graham, acting secretary of war, &c. and the said B. G. Orr, dated 21st November 1816, and the bond of said Orr and his sureties, A. M'Cormick and W. O'Neale, of the same date, with the condition thereof, being the same contract and bond above set out, &c. The attorney of the United States then produced and read to the jury the account stated by the accounting officers of the treasury, against the said Orr; and claimed to recover in this action the balance of three thousand six hundred and fifty-four dollars and forty-six cents, in the said account stated."

To certain items contained in this account the defendant's counsel objected; but no objections were made to four items charged for treasury warrants issued to Orr, amounting to the sum of twenty-eight thousand five hundred dollars.

The first charge excepted to, was made as follows: " Feb-

ruary 19th 1818, for warrant 1680, favour of Richard Smith, dated 27th December 1817, and 11th February 1818, twenty thousand dollars." And on 11th April of the same year, another charge was made, " for warrant No. 1904, for the payment of his two drafts, favour of Alexander M'Cormick, dated 11th and 17th March 1818, for ten thousand dollars." And on the 14th May of the same year a charge was made " for warrant No. 2038, being in part for a bill of exchange in favour of Richard Smith, for twenty thousand dollars,—twelve thousand eight hundred and thirty-two dollars and seventy-eight cents." And one other warrant was charged June 22d, " for a bill of exchange in favour of Richard Smith, dated June 22d 1810, four thousand dollars ; and also a warrant to Richard Smith, per order, for eight thousand dollars.

These items the court instructed the jury, were not sufficiently proved, by being charged in the account and certified under the act of congress.

This instruction, the attorney-general insists, was errroneous; and that these items should have been admitted as proved, on the same principle as the four items to which no objection was made. That, if the government shall be required to produce the authority on which the warrants were issued to Richard Smith and Alexander M'Cormick, on the same principle, the original warrants issued in the name of Orr, and on which his receipts for the moneys are indorsed, should be proved. That it is as likely that some one may have fraudulently obtained these warrants from the treasury, by personating Orr, as that the bills of exchange or orders, on which the warrants were issued to his agents, were forgeries.

The officers of the treasury may well certify facts which come under their official notice, but they cannot certify that which does not come within their own knowledge.

In the case of the United States v. Buford, 3 Peters 12, the court say, that " an account stated at the treasury department, which does not arise in the ordinary mode of doing business in that department, can derive no additional validity from being certified under the act of congress. Such a statement can only be regarded as establishing items for moneys disbursed, through the ordinary channels of the department, where the transactions are shown by its books."

The issuing of the warrants to Orr was an official act, "in the ordinary mode of doing business in the department," and the fact is proved by being certified as the act of congress requires.

But the execution of bills of exchange and orders for money on the treasury, though they may be "connected with the settlement of an account," cannot be officially known to the accounting officers. In such cases, however, provision has been made by law, by which such instruments are made evidence, without proof of the hand writing of the drawer.

In the second section of the act of 3d March 1797, it is provided, that "all copies of bonds, contracts, or other papers, relating to, or connected with the settlement of any account between the United States and an individual, when certified by the register to be true copies of the original on file, and authenticated under the seal of the department, may be annexed to the transcripts, and shall have equal validity, and be entitled to the same degree of credit, which would be due to the original papers, if produced and authenticated in court."

Under this provision, had copies of the bills of exchange and orders, on which the above items were paid to Smith and M'Cormick, been duly certified and annexed to the transcript, the same effect must have been given to them by the circuit court, as if the originals had been produced and proved. And every transcript of accounts from the treasury, which contains items of payments made to others, on the authority of the person charged, should have annexed to it, a duly certified copy of the instrument which authorised such payments. And so in every case, where the government endeavours, by suit, to hold an individual liable for the acts of his agent; the agency on which the act of the government was founded, should be made to appear, by a duly certified copy of the power.

The defendant would be at liberty to impeach the evidence thus certified, and, under peculiar circumstances of alleged fraud, a court might require the production of the original instrument. This, however, would depend upon the exercise of the discretion of the court, and could only be enforced by a continuance of the cause until the original should be produced.

The following item was also objected to by the defendant's counsel. "To accounts transferred from the books of the sec-

ond auditor for this sum, standing to his debit, under said contract on the books of the second auditor, transferred to his debit on those of this office, forty-five thousand dollars."

This item was properly rejected by the circuit court. The act of congress, in making a " transcript from the books and proceedings of the treasury" evidence, does not mean the statement of an account in gross, but a statement of the items, both of the debits and credits, as they were acted upon by the accounting officers of the department. On the trial, the defendant shall be allowed no credit on vouchers, which have not been rejected by the treasury officers, unless it was not in his power to have produced them ; and how could a proper effect be given to this provision, if the credits be charged in gross? The defendant is unquestionably entitled to a detailed statement of the items which compose his account.

Several other items charged against Orr, were rejected by the circuit court, and which are embraced by the bill of exceptions, but they present no point which has not been already considered.

The second bill of exceptions was taken to the instruction of the court, that the defendant was entitled to the credits given to him in the treasury account ; and that in claiming these credits, he did not waive any objection to the items on the debit side of the account.

On the part of the government it is contended, that this instruction is erroneous. That if the defendant relied for his defence on any part of the treasury account, he was bound to take the whole account as stated, and 1 Wash. C. C. Rep. 344, and 3 Wash. C. C. Rep. 28, are referred to as sustaining this doctrine.

There can be no doubt, that if the defendant be called upon to render an account on which the plaintiff seeks to charge him, the account cannot be garbled, but must be taken entire. And so where a plaintiff renders an account, at the instance of the defendant, to be used in his defence ; the account thus rendered is considered as the admission of the party, and its parts cannot be separated.

But the treasury account does not seem to rest upon the same principle.

The accounting officers of the treasury act upon the accounts

and give to the credits, as entered, their official sanction.   The vouchers of an individual are all submitted to these officers, and their decision has always been considered as conclusive upon the government, but not so as against the individual. The law expressly provides, that rejected items may be allowed by the court.   The law makes the treasury account, when properly certified, evidence ; and every item correctly charged in the account, is prima facie established by the transcript.   If, as in the present suit, certain items are charged to an individual, which the treasury officers cannot know officially to be correct, and no other evidence in support of them be adduced, they should be rejected, as was done by the circuit court in this cause ; but no such objection can be made to the credits entered on the account against Orr.   They are all founded upon supplies which he furnished to the troops of the United States under his contract.   These credits have been all examined and allowed by the accounting officers of the treasury department, and all the vouchers on which this action of the treasury took place, remain in that department.

The defendant is entitled to a certified statement of his credits, as allowed by the accounting officers, and he has a right to claim the full benefit of them, in a suit by the government ; and under no circumstances has the government a right to withdraw credits which have been fairly allowed.

In the present case, the government, to sustain its action against the defendant, gives in evidence a treasury account duly certified.   This account, so far as it represents the official action of the treasury, is made evidence by law ; but it contains several items of debits, which, unsupported by other evidence, are not proved by the transcript.   Now, must these items be admitted by the defendant, if he claim the credits which have been allowed him in the same account?   The credits have been duly examined and sanctioned, and the law makes them evidence for the defendant as well as the plaintiffs ; but the items objected to, though charged in the same account, are not thereby made evidence, and without further proof they must be rejected by the court.   Would not the rule be as novel as unjust, which should require the defendant, in a case like this, to admit debits against him, unsupported by proof, if he claims credits in the same account, properly entered and legally proved.

The law has prescribed the mode by which treasury accounts shall be made evidence, and whilst an individual may claim the benefit of this rule, the government can set up no exemption from its operation. In the performance of their official duty, the treasury officers act under the authority of law ; their acts are public, and affect the rights of individuals as well as those of the government. In the adjustment of an account, they sometimes act judicially, and their acts are all recorded on the books and files of the treasury department. So fas as they act strictly within the rules prescribed for the exercise of their powers, their decisions are, in effect, final ; for if an appeal be made, they will receive judicial sanction. Accounts, amounting to many millions annually, come under the action of these officers. It is, therefore, of great importance to the public and to individuals, that the rules by which they exercise their powers should be fixed and known.

Could any thing be more unjust, than for the government to withhold from an individual credits, which its own officers had decided and certified to be just and legal, until he should admit certain charges made against him, but which are unsupported by evidence ? On what must the defendant rely to establish his credits in this case ? The transcript of the treasury ? His vouchers are in the treasury, and having been allowed, must remain on file ; and he can only ask the accounting officers for the evidence of this allowance. Had his vouchers been rejected, he might have obtained them from the department, and submitted them to the jury which tried his cause in the circuit court. And may the evidence of this allowance be withheld unless the defendant shall admit certain items as debits which are unsupported by proof ? But still more than this, when the evidence is before the jury, introduced by the plaintiffs and relied on by them, may they withdraw the credit side of the account, because the defendant will not consent to be charged with certain items, illegally.

The defendant is unquestionably entitled to the evidence of the decision of the treasury officers upon his vouchers, without reference to the charges made against him. And in this suit, he may avail himself of that decision, without in any degree restricting his right to object against any improper charges. The credits were allowed to the defendant on the vouchers alone,

and without reference to the particular items of demand which the government might have against him. And the debits, as well as the credits, must be established on distinct and legal evidence.

It is clear that the government had no right to garble the treasury statement which was offered in evidence in the circuit court, nor to impose any condition on the defendant, in claiming the credits which had been allowed him. In every treasury account on which suit is brought, the law requires the credits to be stated as well as the debits. These credits the officers of the government cannot properly either suppress or withhold. They are made evidence in the case, and were designed by the law for the benefit of the defendant.

In neither of the bills of exception does it appear to this court, that the circuit court erred in their instructions to the jury: their judgment must, therefore, be affirmed.

This cause came on to be heard on the transcript of the record from the circuit court of the United States for the District of Columbia, holden in and for the county of Washington, and was argued by counsel; on consideration whereof, it is ordered and adjudged by this court, that the judgment of the said circuit court in this cause be, and the same is hereby affirmed.