Casey, C. J.,
delivered the opinion of the Court.
In June, 1839, the United States brought an action in the circuit court of the United States for the southern district of New York, on the official bond of Samuel Swartwout, as collector of the port of New York, against Henry Eckford’s executors, whose testator had been one of the sureties in that bond. The action was to recover moneys which Swartwout had received as collector and had embezzled. The defendants interposed various pleas — among others, that the moneys embezzled by the collector were received after his reappointment, and at a time when the defendant’s testator was not surety.
They also pleaded a set-off, claiming a large amount due to their testator from the United States on several accounts, and especially for *221 the occupation of real estate. The cause, after various delays, was brought to trial on the first Monday of April, 1845. It resulted in a verdict for the defendants, and the jury certified that there was due from the United States to the defendants the sum of twenty thousand five hundred and forty-five dollars and fifty-nine cents, ($20,545 59.) The defendants’ counsel moved for judgment on the verdict, and the counsel of the United States for a new trial, and the cause was thereupon continued, from time to time, until the 12th day of October, 1849.
The following entry was made upon the record :
“ It is considered by the said circuit court, before the said judges thereof, now here, that the United States of America take nothing by their said bill, and that the defendants do go thereof without day; and that the said surviving executors are entitled to be paid the said balance so certified by the jurors aforesaid, in form aforesaid, to be due from the United States of America to and in favor of the said executors as aforesaid.
“ Judgment signed this 12th day of October, A. D. 1849.
“RICHARD E. STILLWELL,
“ Deputy Cleric.”
Upon these proceedings had in the circuit court of the United States the questions arise as to whether this alleged verdict and judgment were evidence against the United States ; and, if evidence, what effect was to be given them.
The claimants allege that it is the judgment of a court of competent jurisdiction directly upon the matter in issue here, and therefore not only admissible in evidence, but conclusive of the right. The defendants, on the other hand, contend there was no law authorizing the court and jury to find any sum due from the United States, and that the proceedings were coram non judice, and therefore void. The case is one of importance, both from the amount involved and the principles drawn in controversy. The Constitution of the United States provides that “ the judicial power shall extend to controversies to which .the United States shall be a party;” and also that such “judicial power shall be vested in one Supreme Court, and in such inferior courts as tho Congress may from time to time ordain and establish.” These provisions appear to be clear and explicit. Congress may provide by law that the rights of the United States, other than those of political dominion and sovereignty, may be submitted to judicial cognizance and determination. The only question here is, has Congress *222 clone so ? For it is conceded that, notwithstanding these constitutional provisions, no suit, either in the nature of an original action, or set-off, or cross demand, could be maintained against the United States without a congressional enactment to sustain and authorize it. It is one of the prerogatives of sovereignty to be exempt from legal process, except so far as it may, in questions of property and contracts, voluntarily submit itself to the jurisdiction and judgment of its own courts.
From the commencement of our government the United States found it convenient and necessary to resort to the courts as a plaintiff to enforce their rights against those dealing with them or having possession of their funds. It was soon discovered that a citizen who had received public funds, as an officer or agent, whatever amount the United States might owe him on other accounts, could not, in a suit by the government, interpose his claim as a defence. The injustice and hardship of this rule induced Congress to pass the act of the 3d March, 1797 — §§ 3 and 4, 1 Stat., 514, 515. . By these provisions, a party against whom a suit was brought by the United States, and who was equitably entitled to credits which had been submitted to the accounting officers of the treasury and rejected by them, was permitted to set them off against the claim so made upon him.
Set-off was unknown to the common law, according to which mutual debts were distinct and inextinguishable except by actual payment oi release. In these respects it is a creature of statute; hut the statutes refer only to mutual and unconnected debts, for at common law, when the nature of the employment, transaction, or dealings necessarily constitutes an account consisting of receipts and payments, debts and credits, the balance only is considered to he the debt, and therefore in an action it is not necessary in such cases either to plead or give notice of the set-off; yet, even in such cases, there could be no finding in favor of the defendant. If his account overpaid that of the plaintiff, the action could only be defeated; for anything beyond that a new suit had to he brought. The inconvenience, delay, and multiplication of suits resulting from this practice led to legislative interference, and the passage of acts of defalcation and set-off. They have two general objects in view : first, to allow mutual and unconnected debts to be set off against each other ; and, secondly, to end the whole controversy in one suit, by.allowing the jury, where the defendant’s claim exceeds the plaintiff’s, to find a sum certain in favor of the defendant. Being remedial statutes, they have received a very liberal and beneficent construction from the courts, so as to advance the remedy and suppress the mischief which the legislature had in view. So far as *223 this act of 1797 has been before the courts of the United States, it has received the same large and liberal interpretation. Mr. Justice Story, in delivering the judgment of the Supreme Court of the United States in the ease of The United States v. Wilkins, 6 Wheat., 135, (5 Curt., 38,) says:
“ The 3d section of that act provides that upon suits instituted against a person indebted to the United States, judgment shall be rendered at the return term, unless the defendant shall in open court make oath or affirmation that he is equitably entitled to credits which had been, previous to the commencement of the suit, submitted to the consideration of the accounting officers of the treasury and rejected, &c. The 4th section then provides that in suits between the United States and individuals no claim for a credit shall be admitted upon the trial hut such as shall appear to have been submitted to the accounting officers of the treasury for their examination, and by them disallowed, in whole or in part, unless it shall he proved to the satisfaction of the court that the defendant is at the time of trial in possession of vouchers not before in his power to procure, and that he was prevented from exhibiting a claim for such credit at the treasury by absence from the United States, or some unavoidable accident. The terms of these sections are very broad and comprehensive. The 3d section manifestly supposes that not merely legal but equitable credits ought to be allowed to debtors of the United States by the proper officer of the treasury. And the 4th section prohibits no claims for any credits which have been disallowed at the treasury from being, given in evidence by the defendant at the trial. There being no limitation as to the nature and origin of the claim for a credit which may be set up in the suit, we think it a reasonable construction of the act that it intended to allow the full benefit at the trial of any credit, whether arising out of the particular transaction for which he was sued, or out of any distinct and independent transaction which would constitute a legal or equitable set-off, in whole or in part, of the debt sued for by the United States. The object of the act seems to be to liquidate and adjust all accounts between the parties, and to require a judgment for such sum only as the defendant in equity and justice should be proved to owe to the United States.”
In the case of The United States v. Robeson, 9 Peters, 324, Mr. Justice McLean says : “ Where a defendant has in his own right an equitable claim against the government for services rendered, or otherwise, and has presented it to the proper officer of the government, *224 who has refused to allow it, he may set up the claim as a credit on a writ brought against him for any balance of money claimed to be due the government.”
These cases very distinctlyand unequivocally recognize the right of a defendant, in a suit by the United States, to plead his set-off — to prove it before the court and jury. But to what purpose is this permitted, if the tribunal may not pass upon it and pronounce the-sentence of the law fixing the rights of the parties in relation to it?
The Solicitor contends that though a set-off may be used to defeat a suit by the United States, it cannot be made the means of establishing and recovering a balance found due the defendant. That as such a claim cannot be recovered or enforced by a suit; it cannot be established in set-off, as that is a mere cross action. To sustain this view of the case, the decision of the Supreme Court of the United States in the case of Reeside v. Walker, 11 How., 290, is cited. That case arose upon an application by Mrs. Reeside to the circuit court of the District of Columbia for a mandamus against Mr. Walker, the Secretary of the Treasury, to compel him to pay the amount of an alleged judgment found due in favor of her testator by the circuit court of the United States for the eastern district of Pennsylvania, amounting to one hundred and eightj'-eight thousand four hundred and ninety-six dollars and six cents ($188,496 06.) An examination of the record in that case shows that the United States brought suit against Reeside to recover certain moneys alleged to be due by him to the United States. He pleaded his set-off. On the trial the jury found a verdict in his favor, and certified that there was a balance due him of the amount above stated. At the date of these proceedings, 1841, the law and practice of Pennsylvania on this subject was regulated by the old colonial statute of 1705, which provided : “ But if it appear to the jury that the plaintiff is overpaid, then they shall give in their verdict for the defendant, and withal certify to the court how much they find the plaintiff to be indebted- or in arrear to the defendant more than will answer the debt or sum demanded ; and the sum or sums so certified shall be recorded with the verdict, and shall be deemed as a debt of record ; and if the plaintiff refuse to pay the same the defendantfor recovery thereof shall have a scire facias against the plaintiff in the said action, and have execution for the same, with the costs of that action.” Since then the law of that State has been changed by an act of the legislature of 11th April, 1848, by which judgment and execution in such cases go the same as if the verdict had been in favor of *225 the plaintiff, thus making it conform to the modern practice generally adopted, on this subject.
The circuit court of the United States, sitting in Pennsylvania, proceeded, in accordance with the 34th section of the judiciary act, 1789, 1 Stat., 92, which enacts “that the laws of the several States, except where the Constitution, treaties, or statutes of the United States shall otherwise require or provide, shall be regarded as a rule of decision in trials at common law in the courts of the United States in cases where they apply.”
Under the law of Pennsylvania, as it then stood, as we have already seen, no judgment could have been entered on the amount certified by the jury. The act fixed its character. It was a debt of record, like a recognizance, or a foreign judgment forming the foundation for a suit, which could only be defended against successfully by showing it had been discharged by matters occurring since it was found and certified, or by showing that the court had not jurisdiction of the parties or subject-matter. Of course no judgment could be rendered upon it, or execution to compel its payment. Hence Mr. Justice Woodbury, in the case of Reeside v. Walker, already quoted, while denying that it was either in form or effect a judgment against the United States, did not question its validity as a debt due from the government. It is doubtless true that no scire facias could have issued upon the certificate of the jury in that case, for that was in the nature of a new suit. None could then have been sustained against the United States anywhere, nor could any be brought now in that court. We do not understand the Supreme Court, however, in the case in 11 Howard, 290, to decide that the indebtedness to an individual by the government may not be established under the plea of set-off in a suit brought by the United States as plaintiff; but that there was no act of Congress authorizing any court to enter a judgment in form against the government, or any means of enforcing it. On the other hand, we do understand the act of 1797 as conferring power upon the courts to settle and adjust the accounts of the parties in that case, and such was the view of the Supreme Court in the case of The United States v. Wilkins, 6 Wheat., 135, where Mr. Justice Story says : “ The object of the act seems •to be to liquidate and adjust all accounts between the parties.” So in the case of The United States v. The Bank of the Metropolis, 15 Peters, 390, there was a verdict for the defendants and a certificate by the jury in their favor for three thousand three hundred and seventy-one dollars and ninety-four cents, *226 ($3,371 94.) Upon error to the Supreme Court of the United States, one of the exceptions taken to the ruling of the circuit court was the allowance of the set-off. Yet the judgment was affirmed, Mr. Justice Wayne saying: ‘‘ If it shall become necessary for the United. States to sue for the recovery of the fund,.the defendant in the action may claim against the demand for which the action has been brought any credits which he shall prove himself entitled to, if they have been previously presented to the proper accounting officers of the treasury and been rejected. Such is the law as it now stands. This right was early given by an act of Congress to all defendants in suits by the United States — 1 Story. It has been repeatedly befoie this court. The decisions upon it need not be cited. They apply to this case."' And the judgment was affirmed, and Congress afterwards made an appropriation to pay the amount so found due to the bank, and it was paid.
It will be observed, too, that the expressions in the opinion of Mr. Justice Woodbury which are supposed to militate against the validity of the finding as a debt were not upon the points directly before the court, but mentioned incidentally. Mrs. Reeside had set out the finding in the circuit court as a judgment recovered against the United States. The points decided in 11 Howard were : First, that the finding was not a technical judgment, and therefore her allegation was not sustained. Second, even if it had been so, the mandamus would not lie, as the Secretary of the Treasury was not bound to enter the claim as'a debt upon his books, and if he did so, he could not and ought not to pay it until there was an appropriation by Congress for that purpose.
We take it, therefore, that the precise point, -what force and effect, if any, is to be given to the finding of a court and jury in a case like the present, in favor of an individual against the United States, has never been directly decided by the Supreme Court of the United States; and we are left, therefore, to reach a conclusion upon principle and analogy.
It must be noted, too, that the decision in 11 Howard was pronounced in part upon the peculiar features of the Pennsylvania statute regulating set-off, which fact is important, as the doctrine is recognized that in those cases the law of the State furnishes “ the rule of decision,” under the 34th section of the judiciary act of 24th September, 1789. That brings this under the rule of the New York statutes of set-off, (2 Rev. Stat., p. 605,) which provides, “ If there be found a *227 balance due from the plaintiff in the action to the defendant, judgment shall be rendered for the defendant for the amount thereof.”
It remains for us to inquire what effect is to be given to the verdict and the alleged judgment entered in this case. On the question of the jurisdiction of the circuit court there can be but little difference of opinion. It was a suit voluntarily instituted by the United States to recover an alleged demand against an individual. Their right to institute and maintain such a suit has never been questioned. This drew after it the right and jurisdiction to entertain the set-off, by virtue of the express provisions of the act of Congress, approved 3d March, 1797, sections 3 and 4. The right to entertain it necessarily implied and carried with it the right to hear and determine upon its existence, validity, legality, and amount. That must be done judicially, for the courts can exercise no other than judicial functions; neither could Congress confer upon them any other kind of duties. If, therefore, they act upon it in this manner, the conclusion reached, by whatever name called, must be a judicial determination; and if such, it must in its nature be definitive and final.
As we understand the argument, the power and jurisdiction of the circuit court is conceded; it is the extent to which it may be exercised that occasions the dispute. Those who would -limit the set-off to a mere defeat of the action, do so on the ground of the character of government, as one of the parties. In the absence of the act, this would be unanswerable. The set-off being in the nature of a cross action, could no more be entertained than an original suit. It was to remove that very obstacle the act was passed, and it is well settled that when a sovereignty consents to submit its controversies to judicial arbitrament, its rights of property and contract are to be measured and determined by the ordinary rules of justice and law.
Thus we have before the circuit court of the United States for the southern district of New York the United States as plaintiffs, and the claimants as defendants. There is no shadow of doubt as to the right of the court to entertain the plaintiff’s cause of action as declared on, and as little dispute of the right to pass upon the set-off set up iii the defendant’s pleas.' So far there can be no question either of jurisdiction or power. We have the two actions in one cause — a double suit before the court. Each disputes the right of the other to recover. The questions involve an examination into both eases,-thorough and complete. If both claims are allowed, and that of the United States proves the greater in amount, both can be judicially passed upon and *228 adjudicated by the court, in a final and conclusive judgment. But if the account of the defendant preponderates, according to this view, it changes the whole principle, and it can only be passed upon so far as it may be equal in amount to the plaintiff’s claim; thus making the power and jurisdiction of the court to depend, not upon the status of the parties or the subject-matter of the suits, but upon the extent and amount of the plaintiff’s demand. The set-off is in the nature of a cross action, as much as if it were a separate suit, and the defendant is held to the same proof of it as if he were plaintiff in the action. On this principle the supreme court of Pennsylvania decided that there could be no set-off against set-off— Ulrich v. Berger, 4 W. & S., 19; and that, in analogy to the right of a plaintiff to suffer a nonsuit, the set-off could be withdrawn—Muirhead v. Fitzpatrick, 5 W. & S., 506.
Suppose the set-off to consist of a single claim or item, incapable of separation or division in its proof or allowance, and it exceeds the plaintiff’s demand. To prove any part is to prove the whole. To decide in favor of a portion, must carry with it a determination in favor of the entire claim. Or suppose the credits to consist of several matters or items, no one of which is equal to the plaintiff’s debt, and yet any two are beyond that amount. Now, in either of these cases, how is the defendant’s cause of an action to be divided and distinguished ? The verdict, it is said, should be simply for the defendant, the judgment upon which would be “ that he go thereof without day.” What, then, does this record prove? Simply that the demand of the United States was declared upon on the one side, the cross action or set-off pleaded on the other, and that upon trial before the court the jury found that the one was equal to the other, but no greater, and the court so adjudged. That record is perfect and complete proof for each party that neither owes the other anything whatever in respect to the claims made in that suit on each side. It is, in the language of Chief Justice DeGrey in the Duchess of Kingston’s case, 11 St. Trials, 261, “the judgment of a court of competent jurisdiction directly upon the point, and is therefore conclusive of the same matter coming in question between the same parties in another court.” That record imports absolute verity, and no averment can be received to the contrary. Even the court which rendered the judgment, after the term at which it was entered, has no power to change or vacate it, or set it aside. (12 Peters, 488; 3 How., 413; 3 Wheat., 591 ; 6 How., 31.) It is admitted that if the judgment had been in favor of the plaintiffs, it would have been conclusive, even upon the United States. Would it not *229 have been equally final and conclusive against the defendants there, and claimants here, in respect to the set-off claimed if the verdict and judgment had been against them % No one doubts or denies that. Mutuality and equality in this regard would appear to be equity, and it is strange if it is not law.
Let us suppose that a defendant in such a case, who has set up his credits and had them allowed in the circuit court to the extent of defeating the claim made by the United States, comes into this court to recover the balance due him ; how are we to ascertain how much of the verdict in his favor was owing to the failure of the United States to establish their claims against him 1 And how much, if any, of his credits were absorbed in nullifying or liquidating the plaintiff’s demand ? After the lapse of nearly a generation, when all remembrance has been swept from the memory of the living and most of the actors in it have passed away, no one could tell. And if they could, would it be safe or desirable to have the effect of judicial findings dependent upon the frail memory of man 1 Adopting the views pressed upon us with so much earnestness and ability by the solicitors, we should have to decide that this record from the circuit court determined nothing whatever. We should have in many cases to go into the evidence on both sides, and, instead of giving effect to it as the solemn judgment of a high judicial tribunal, to make it less than presumptive, not even, persuasive evidence.
When a court of record has jurisdiction of a subject-matter, that jurisdiction necessarily extends to a complete and final adjudication of the whole case. Anything less than this simply amounts to a' denial of jurisdiction altogether.
The case of The Commonwealth v. Matlock, 4 Dall., 303, has been much pressed upon us in the argument. That case was decided shortly after the Revolution, by the supreme court of Pennsylvania, in which it was held that a public officer sued by the State could not, under the act of 1705, present his set-off, and have a balance certified in his favor, because the Commonwealth was not liable to suit, and the act did not extend to the State, it not being expressly named in the statute.
The answer to this is not only very simple, hut, as appears to us, entirely conclusive. The right to the set-ojf, in this ease, was hot under the law of New York, hut under the act of Congress of 3d March, 1797, which gives it expressly and explicitly against the United States. The law of'New York furnished only the rule of decision, or, *230 in other words, regulated the mode and manner of establishing and enforcing a right which Congress had conferred. And this was also in virtue of another congressional enactment in the 3 -1-th section of the judiciary act for the convenience of courts and parties, and the orderly administration of justice.
Much of the confusion upon this subject appears to have arisen from the idea that, because a judgment against the United States could not be enforced by execution, and no provision has been made for carrying it into effect, that therefore none could be rendered. This, we think, is fallacious. The proceedings which lead to judgment are judicial. Those which relate to the execution, or the proceedings subsequent to the judgment, are mostly ministerial. (10 Wheat., 24, per Chief Justice Marshall.) The questions before us are, not whether this judgment could have been enforced, but whether the debt is due, and whether this record is evidence of it. In the case of Mills v. Duryee, (7 Cranch, 481,) Mr. Justice Story said: “The right of a court to issue execution depends upon its own powers and organization. Its judgments may be complete and perfect, and have full effect, independent of the right to issue execution.”
We are sustained in these views by the general practice of the courts under this statute for nearly seventy years. In the cases of United States v. Fillebrown, 7 Peters, 28; United States v. Ripley, 7 Peters, 18; United States v. Ringold, 8 Peters, 150; United States v. Jones, 8 Peters, 375; United States v. McDaniel, 7 Peters, 1— in all of these cases, and many more that might bo cited, the right to make the set-off was sustained by the Supreme Court of the United States. In several of them there were certificates of balances found for various sums in favor of the defendants, and the judgments were affirmed without the least intimation that these findings were even irregular, much less utterly void. In these cases, as in the Bank of the Metropolis, 15 Peters, the Congress provided for their payment.
In The United States v. Ringold, Mr. Justice Thompson says: “ It is undoubtedly a general rule that no court can give a direct judgment against the United States for costs in a suit to which they are a party, either on the part of any suitor or any officer of the government. (12 Wheat., 550.) But it by no means follows from this that they are not liable for their own costs. No direct suit can be maintained against the United States. But when an action is brought by the United States to recover money in the hands of a party who has a legal claim against them, it would be a very rigid principle to deny to him the *231 right of sotting up such a claim in a court of justice, and turn him round to an application to Congress. If the right of the party is fixed by the existing law, there can be no necessity for an application to Congress except for purpose of remedy. And no such necessity can exist when this right can be properly set up by way of defence to a suit by the United States.”
• The case of Eeeside, referred to and reported in 11 Howard, after-wards came before this court. The finding in the circuit court of the United States in favor of Eeeside, though not in form a technical judgment, was held to be a judicial determination — a debt of record in virtue of the Pennsylvania statute, and, as such, conclusive of the claimant’s right to recover. The judgment of the court in the case was supported by an able opinion of Chief Justice Gilchrist, which, we think, has not been shaken by the able and ingenious arguments in this case. And the Congress, in both houses, affirmed the finding and appropriated the money to pay the judgment.
The 7th article of the amendments to the Constitution of the United States provides that, “ in suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any court of the United States than according to the rules of the common law.” In the former part of this opinion we have endeavored to show that this question was rightfully and properly submitted to the jury. If that be correct, their finding is protected and guarded by the fundamental law of the land, and given a complete and final effect. The only mode by which it could have been re-examined was by setting aside the verdict and granting a new trial. This was moved for in the circuit court, and, after several arguments by able counsel, was refused. If we are right in supposing that the court and jury had jurisdiction to pass upon the case, the facts necessary to establish the defendants’ claim and the indebtedness of the United States to them were conclusively settled. They could be re-examined only in the mode pointed out by common law, and that was by the granting of a new trial by the court before whom the case was tried, or by the reversal of the judgment by the Supreme Court on error, brought for misdirection to the jury in matters of law. We think this is in form, and substance a judgment; but whether really a technical judgment or not, can make very little difference. There has been, so far as this record shows, a fair and impartial trial before one of the highest courts known to our judiciary. The United States have been represented by *232 eminent counsel, and, after thorough investigation, the court and jury have said that the United States owe these plaintiffs the amount found by the verdict of the jury. It has been passed upon in the trial, and upon the motion for a new trial, by an eminent judge of the Supreme Court of the United States. All the objections made here have doubtless been urged before that court by the eminent gentlemen who at different periods represented the United States in the case. They were unavailing there, and they cannot prevail here.
Mr. S. E. Lyon for the claimants.
Mr. Bingham, the Solicitor, and Mr. Weed, the Assistant Solicitor, for the government.
If this finding and judgment were wrong, the Supreme Court, upon error brought by the United States, would have reversed it. For sixteen years it has stood unreversed and unimpeached, and, we think, unimpeachable in this collateral proceeding.
The matters out of which this controversy arose have passed in ram judicatam, and we therefore have given no examination to the case upon the original facts and merits.
On the question of interest we are controlled by the express enactment of the act of 3d March, 1863 : “ That no interest shall be allowed on any claim up to the time of the rendition of the judgment by said Court of Claims, unless upon a contract expressly stipulating for the payment of interest.” There being no express contract for the payment of interest, we cannot allow it.
We find for the claimants the sum of twenty thousand five hundred and forty-five dollars and fifty-nine cents ; and for this amount direct a judgment to be entered in their favor.
Judge Loring dissented.
This case was argued before Judge Nott was on the bench, and he took no pai-t in the decision.