## UNITED STATES v. BUTLER.

### (Circuit Court, D. Maine.   March 26, 1902.)

### No. 115.

**1. UNITED STATES—LIABILITY OF OFFICER FOR FUNDS STOLEN—INTEREST.**

The rule applied that in an action by the United States against a disbursing officer to recover public funds which were abstracted from defendant's possession without his knowledge, and from which he received no benefit, where no demand is proved, interest is not recoverable prior to the date of the writ.

**2. SAME—BURDEN OF PROOF.**

Where the accounts of a disbursing officer of the army, which were duly audited and allowed, were restated by the treasury department nearly 10 years later, and a claim made against the officer for a sum shown to be due from him by the restatement, the burden rests upon the United States to falsify the accounts previously allowed by clear and satisfactory proof.

**3. SAME—ACTION AGAINST DISBURSING OFFICER—SUFFICIENCY OF PROOF.**

Defendant was acting paymaster in the army at the Rock Island arsenal. The pay rolls were made up by a clerk appointed by the commanding officer, and, after being approved by such officer, were delivered to defendant for payment. His accounts for disbursements on account of such payments were allowed by the department, but it was subsequently discovered that the clerk, in making up the pay-rolls, had entered after the names of certain workmen, as due them for wages, larger sums than were actually due, and by some means had secured for himself the excess payments. After such discovery, and the trial and conviction of the clerk, defendant's accounts were, after 10 years' delay, restated, and suit was brought against him to recover the amount of the alleged shortage thereby shown. He was ignorant of the frauds, and received no benefit from the same. The evidence did not show with any certainty whether the clerk abstracted the money from the pay envelopes before it had been disbursed by defendant, or secured it after its disbursement in accordance with the pay rolls as approved, through collusion with the workmen or otherwise. *Held*, that the case was insufficient to charge defendant with liability.

At Law.   Action to charge defendant with liability as a disbursing officer of the army.

Isaac W. Dyer, U. S. Atty.

Richard Webb, for defendant.

PUTNAM, Circuit Judge.   In this case the writ bears date March 6, 1899, and the declaration contains two counts,—the first one for $524.40, money had and received to the plaintiffs' use; and the second one for interest on the same.

Inasmuch as the suit is to recover public funds, which it is claimed were abstracted from the possession of the defendant as a disbursing officer without his knowledge, and while he was innocent in reference thereto, and, as the defendant had no use thereof, and no demand is proven, the interest charged in the declaration cannot be recovered. This has been so held, not only in behalf of sureties, but in the opinion of Mr. Justice Miller in U. S. v. Denvir, 106 U. S. 538, 1 Sup. Ct. 481, 27 L. Ed. 264, it was stated to apply in behalf of the officer himself. Moreover, while ordinarily laches does not apply as against the United

States, it does apply against them so far as interest is concerned. U. S. v. Sanborn, 135 U. S. 271, 281, 10 Sup. Ct. 812, 34 L. Ed. 112. There is enough in this case on either rule thus stated by the supreme court to bar the United States from recovering any interest accruing prior to the date of the writ.

The defendant, from some period in 1883 to some period in 1886, was a commissioned officer of the United States in the ordnance corps, and during a portion or the whole of that period he was acting paymaster, as provided in section 1161 of the Revised Statutes. The transactions involved ended in 1886, and at some time previous to November 25, 1889, the defendant's accounts as such paymaster were duly allowed. This so stood until they were restated by the accounting officers of the treasury under date of November 22, 1898. As originally allowed, they showed nothing due from him on account of the present claim, but, as restated, they show the amount covered in the first count of the declaration.

This restatement is found at length in the record. It refers to certain items of disbursement, which it states had been allowed in prior settlements, and which it states had been charged back to the defendant in a settlement No. 8,942, of November 25, 1889. That settlement we do not find in the record. Therefore we are compelled to reject it from our consideration, and the dates stand as follows: The defendant's accounts were settled and allowed by the proper accounting officers of the treasury some time prior to November 25, 1889, and on November 22, 1898, they were restated, and a balance declared, corresponding to the amount demanded in the first count of the declaration.

That under section 886 of the Revised Statutes a disbursing officer's accounts may, under some circumstances, and with reference to certain matters, be restated by the treasury, and that, when so restated, they may be used to make a prima facie case against him, cannot be questioned, in view of Soule v. U. S., 100 U. S. 8, 11, 25 L. Ed. 536, and Moses v. U. S., 166 U. S. 571, 594, 599, 17 Sup. Ct. 682, 41 L. Ed. 1119. In the present case the restatement apparently arises largely, if not entirely, out of alleged forgeries and alterations in the defendant's vouchers, by which the person who is charged with making the forgeries and alterations was enabled to cover up thefts of the public moneys in the hands of the defendant. Whether, in view of U. S. v. Jones, 8 Pet. 375, 8 L. Ed. 979, and Bruce v. U. S., 17 How. 437, 15 L. Ed. 129, such alleged forgeries and alterations are so far within the cognizance of the officers of the treasury that a restatement of an account growing out of the same is effective, or whether the accounts were restated and certified in accordance with the statutes and the regulations of the treasury, and how far such restatements are affected by the act of July 31, 1894 (28 Stat. 162, 168), we are not called on to consider, because we are not called on to give statutory effect to the restatement found in the record. The United States rest their case on the claim that the defendant did not conform to the army rules and regulations, and especially to those concerning the ordnance corps, by virtue of which neglect he hazarded the public moneys in question; and also on their offer to show by primary proofs that the sums dis-

allowed by the treasury were part of the moneys which came into the hands of the defendant, and were never disbursed at all.

As to the first proposition of the United States, the rules and regulations referred to are, in some respects, too obscure to justify us in holding the defendant responsible for public funds by reason of not complying with them. The various steps necessary to show that the loss of the public moneys arose through their violation do not all clearly appear. What is more important, these rules and regulations for the most part, if not entirely, concern the personal conduct of the officer, so that the violation of them subjects him to proceedings before a military tribunal, and not to a liability to be charged in damages by a civil tribunal; and, on the whole, there is not enough here, in connection with whatever else appears in the case, to change the burden which rests on the United States, which we will explain.

The defendant's accounts having been allowed, they stand like an account stated, and the burden is on the United States to show them erroneous. This burden, under the circumstances of the long delay, before, so far as the record shows, the claim was made on the defendant, necessarily, to such an extent, obscures the facts, and adds to the difficulty which the defendant would have in ascertaining and proving them, that this burden is thereby very much increased. The hardship growing out of reopening the accounts of a disbursing officer of the army of the United States, where the facts are so complicated and doubtful as it will appear they are at bar, is especially great in view of the fact that military orders issued at comparatively short intervals take such officers from point to point, and often long distances, and thus leave them where it is impracticable for them to investigate, or direct an investigation of, matters which can be supported or overthrown only by proofs derived from the immediate locality of the transactions involved. Therefore, under the peculiar circumstances of this case, we do not hesitate to say that the burden rests on the United States to falsify the accounts of the defendant, which they once allowed, by clear and satisfactory proofs. In view of this, what is the record which we have before us?

It consists largely of an agreed statement, which is substantially as follows: The defendant was on duty at the Rock Island arsenal, where the commanding officer hired the workmen, and, among the rest, the clerk, one Mr. Warren, who is charged with the theft or fraud out of which the present claim arises. This clerk made up the pay rolls, which were submitted to the commanding officer for his approval, and which, after being certified by him as correct, were delivered to the defendant with a written order for their payment. While, on the one hand, there can be no question that the defendant falls within the great class of United States disbursing officers who are chargeable with public funds received by them, except as against the acts of God or of the public enemy, or that, also, he did receive the sums covering the amount now demanded of him, yet, on the other hand, it cannot be questioned that, under the law and the regulations, it was his duty to pay, and he was justified in paying, and entitled to be allowed the amounts required in paying, the rolls thus certified to him, even if they had been fraudulently drawn up, or altered or

falsified in any manner before they received the approval of the commanding officer. The agreed case then proceeds as follows:

"It subsequently appeared that the said Richard O. Warren, whose duty it had been to make up these pay rolls as aforesaid, had, from time to time, entered after the names of certain workmen, as due them for wages, larger sums than were actually due, and then, by further acts of dishonesty, the said Warren had arranged to secure for himself the excess payments. By means of these frauds, extending over a long period of time, there was improperly paid out upon these pay rolls the sum of $524.40. Upon said frauds being discovered, said Warren was indicted, tried, convicted, and punished therefor. The said defendant was at all times and in all things ignorant of said frauds, and innocent of any intention or desire to defraud the government or any of its employés, and from said frauds he derived no benefit, directly or indirectly, pecuniary or otherwise."

It was also agreed that the United States might, as a part of their case, introduce, and it did introduce, the reports of certain officers of the ordnance corps, who made certain investigations with reference to the matters in question; that those officers, if present, would testify as stated in those reports, and that, also, the United States might introduce the treasury transcript to which we have referred. These reports were made in 1888, but whether before or after the defendant's accounts were settled as stated the record does not show. The difficulty with them is that they do not contain matters within the personal knowledge of either of the officers who made the reports, which would aid the court, if proven by their testimony in open court. Among other things, so far as they are specific even in matters of information, they mainly relate to the transactions of an officer of the ordnance corps who had been acting as paymaster either before or after the defendant so acted. No better exposition of the lack of any practical use as evidence, under the fundamental rules of law, to which the court can put these reports, or any part of them, can be given than is shown by the following extract from one of them:

"The whole system of stating the accounts of the employés at this arsenal for the period included in our investigation was so generally irregular as to place us frequently in doubt as to whether or not any particular irregularity covered a fraud. The absence of the responsible officer, or of any one who had a knowledge of the circumstances and facts at the time, rendered the uncertainty greater, and the task more difficult. Mr. Warren's opportunities and methods were such that it was possible for him to so alter the accounts that at this late period detection in every instance would be impossible, and therefore it is not claimed that the foregoing statement covers all the irregularities through which fraud was committed; neither is it claimed that each of the irregularities noted covers a fraud. They are irregularities for which no explanation was given or could be found, and most of them certainly cover frauds."

It appears, from a statement made by the defendant and put into the case, that he was accustomed to make up envelopes containing the several amounts to be paid to the several persons whose names appeared on the pay rolls certified to him, and that these envelopes, or a portion of them, were deposited at times in a safe in the office of the commanding officer of the arsenal, to which safe Clerk Warren had access. He also states that the United States claim that the wrongs were accomplished through thefts made by Clerk Warren by abstracting from these envelopes certain amounts corresponding in

the whole to the sum now demanded, so that those amounts never came to the hands of the persons named on the pay rolls; and that he covered up these thefts by falsifications of the rolls after they had been certified by the commanding officer. Of course, if the United States clearly proved such to be the fact, the defendant would stand liable for the amounts so abstracted, because, as maintained by the second proposition of the United States, it would then be the fact that he never disbursed them. If, on the other hand, the moneys were taken from the envelopes after they had been disbursed by the defendant, either by fraudulent arrangements between Clerk Warren and the workmen whose names were on the pay rolls, or in any other manner; or if the actual payments corresponded to the pay rolls as certified by the commanding officer, and the pay rolls were afterwards falsified; or if, in any way, the defendant paid into the hands of the workmen the amounts called for by the pay rolls as they stood when certified by the commanding officer,—he would stand relieved. As we have said, it rests on the United States, under the circumstances, to show clearly and satisfactorily how the wrongs occurred. So far from doing this, the record shows only that the officers who were especially sent to investigate the alleged wrongs were unable to discover the methods in which they were effected, the conclusion being, as stated in the report which we have cited, that, for at least a portion of the irregularities, if not for all of them, "no explanation was given or could be found." The United States gave no clear explanation then and give us none now; and therefore, for the reasons we have stated, their case fails.

The court finds in favor of the defendant, without costs.