UNITED STATES of America,
Plaintiff,

v.

William A. TAYLOR and Royal Indemnity Company, Defendants.

Civ. No. 6718.

United States District Court
E. D. New York.

June 24, 1955.

Leonard P. Moore, U. S. Atty., Brooklyn, N. Y., Margaret E. Millus, Asst. U. S. Atty., Brooklyn, N. Y., of counsel, for plaintiff.

Nathaniel E. Wheeler, New York City, for Royal Indemnity Co., defendant.

Donald C. Strachman, Edward Alan Shure, New York City, Bart A. Moynahan, White Plains, N. Y., of counsel, for William A. Taylor, defendant.

GALSTON, District Judge.

The immediate matter before the court is a consideration of cross-motions, both of which will be dealt with in this opinion.

The first motion is that of the defendant Royal Indemnity Company for an order directing that summary judgment be

entered in favor of that defendant dismissing the complaint on the ground that by virtue of the provisions of Title 6 U.S.C.A. § 5, defendant, as surety on the bond of defendant Taylor, is not liable for the indebtedness set forth in the complaint.

The second motion is a cross-motion made by the plaintiff seeking summary judgment against both defendants.

The complaint filed at the instance of the Comptroller General of the United States, acting on behalf of the General Accounting Office, and at the direction of the Attorney General, Title 31, U.S.C.A. § 505, charges that the defendant Taylor, on May 16, 1930, was appointed Property and Disbursing Officer of the United States for the National Guard of the State of New York, with headquarters at Brooklyn, whose duties in part consisted of receiving and disbursing public money and property of the United States. It is alleged that on April 23, 1930, Taylor as principal, and the Royal Indemnity Company as surety, executed and delivered to the plaintiff an official bond under the provisions of Sec. 67 of the National Defense Act of June 3, 1916, as amended, 32 U.S.C.A. § 49, under the terms of which the defendants guaranteed that Taylor, in his aforesaid capacity, would lawfully account to the United States for all funds and property belonging to the United States which might come into possession of the National Guard, and that Taylor would carefully discharge the duties of his office and safely keep or properly disburse and faithfully account for all federal property and funds entrusted to his care, without fraud or delay, during the period of the operation of the bond. This bond was, on May 16, 1930, duly accepted by the plaintiff. Thereafter thirty stipulations and consent agreements were executed amending the bond. It is alleged that during the period of operation of the bond the United States turned over to Taylor, in his official capacity, property and public funds in the sum of $150,126.52, for which the defendant has unlawfully failed and refused to account to the plaintiff, and that the defendant Taylor is indebted to the United States for that sum as shown on a Settlement of Account, bearing date October 8, 1943. It is alleged that upon the discovery by the accounting officers of the aforesaid deficiency, they notified the Secretary of War, and the Chief of Finance of the War Department certified the deficiency and indebtedness to the Comptroller General of the United States. Payment was then duly demanded from the defendant Taylor, and notification sent to the Royal Indemnity Company pursuant to the provisions of the Act of August 8, 1888, Title 6 U.S.C.A. § 4. In this notice, by form of letter from the plaintiff to the Royal Indemnity Company, demand was made upon that defendant for payment to the plaintiff of the sum of $60,000, being the face amount of the bond of April 23, 1930. So the plaintiff seeks judgment against Taylor in the sum of $150,126.52, and against the Indemnity Company in the sum of $60,000.

Separate answers were interposed by the defendants.

The defendant Taylor, after denials based on lack of knowledge or information in respect to Paragraphs First and Ninth of the complaint, denies the allegations of Paragraph Fifth, except as to that part of the paragraph alleging the filing of a bond. He also denies the allegations in Paragraphs Sixth, Seventh, Eighth, Tenth and Eleventh, except that he admits that demand was made for the sum of $60,000, and no payment was made pursuant to that demand.

For a separate defense Taylor alleges that he carefully discharged the duties of his office, and safely kept or properly disbursed funds entrusted to his care without fraud or delay, and that he is not liable to the plaintiff for any property or public funds which came into his possession, "during the period of the operation of the said official bond". He alleges that he should have had full notice of the alleged facts set forth in the complaint which plaintiff alleges violated the provi-

sions of the official bond, and that that bond expired in 1934, and that this action was not commenced until March 25, 1946, and the plaintiff is therefore guilty of laches.

The answer of the Royal Indemnity Company makes the same denials as are set forth in the Taylor answer.

As a separate defense it is alleged that the General Accounting Office did examine and settle the accounts of the defendant Taylor for the period from May 16, 1930, to April 23, 1934, and that thereafter, and prior hereto, the Accounting Office issued statements and certificates of settlement wherein it was certified that there were balances due to the plaintiff from the defendant. The allegation is made that this suit was instituted on March 28, 1946, more than five years after the statements and certificates of settlement had been filed, and that by virtue of the provisions of Title 6 U.S.C.A. § 5, the Royal Indemnity Company, as surety on the bond, and the bond stipulations and agreements described in the complaint, ceased to be and is not liable for such indebtedness.

A second separate defense alleges that the plaintiff should have filed notice of the facts alleged in the complaint, and that it is guilty of laches such as in equity should bar the plaintiff from maintaining this action.

Coming now to the motion of the Indemnity Company for summary judgment: As has been noted, the contention is made that the action is barred by the statute of limitations, and that therefore the defendant is entitled to a summary judgment dismissing the complaint. It is argued that the rights of the plaintiff are restricted by the provisions of Title 6 U.S.C.A. § 5, which provides as follows:

"If, upon the statement of the account of any official of the United States, or of any officer disbursing or chargeable with public money, by the accounting officers, it shall there-

by appear that he is indebted to the United States, and suit therefor shall not be instituted within five years after such statement of said account, the sureties on his bond shall not be liable for such indebtedness. July 30, 1947, c. 390, § 1, 61 Stat. 646."

It is argued that the Taylor accounts were audited from year to year, and that in 1937 for the first time the claims embraced in this litigation were made against him through written notices of individual items of disallowance for the years 1930–1934. By notice dated November 22, 1939, written demand was made upon the Surety for the sum of $167,915.11. This notice refers to the Certificate of Settlement of Account dated November 8, 1939.

A further Certificate of Settlement, dated March 15, 1943, was issued by the plaintiff, claiming $172,311.87, but this was followed by a Certificate of Settlement dated October 8, 1943, for $163,-506.44. The Statement of Account was dated November 12, 1943, for the same amount.

Thereafter plaintiff reduced its claim, dated December 2, 1949, to $78,612.72, which is the amount sought in this action. The summons and complaint herein were filed on March 28, 1946.

It is the claim of the Government that the running of the five-year statute of limitations, Title 6 U.S.C.A. § 5, was suspended by the wartime Suspension of Limitations Act, 18 U.S.C.A. § 590a.[1] That section read as follows at the time the complaint was filed:

"The running of any existing statute of limitations applicable to any offense against the laws of the United States (1) involving defrauding or attempts to defraud the United States or any agency thereof whether by conspiracy or not, and in any manner, or (2) committed in connection with the negotiation, procurement, award, performance, payment

[1]. Now 18 U.S.C.A. § 3287.

for, interim financing, cancelation or other termination or settlement, of any contract, subcontract, or purchase order which is connected with or related to the prosecution of World War II, or with any disposition of termination inventory by any war contractor or Government agency, or (3) committed in connection with the care and handling and disposal of property under sections 1611–1614, 1615–1646 of Appendix to Title 50, shall be suspended until three years after the termination of hostilities in World War II as proclaimed by the President or by a concurrent resolution of the two Houses of Congress. This section shall apply to acts, offenses, or transactions where the existing statute of limitations has not yet fully run, but it shall not apply to acts, offenses, or transactions which are already barred by provisions of existing law."

The Surety contends that the Suspension Statute applies only to crimes and not to civil actions. It points out that the Suspension Statute is found in the United States Code relating to Crimes and Criminal Procedure. The difficulty with the argument is that it ignores that the basic fact must be the determination whether the acts of which Taylor is charged fall within the framework of the Suspension Statute.

■ Did the acts which are charged against Taylor involve fraud or attempted fraud, and were his acts committed in connection with the acquisition, care, handling, custody and control of any property of the United States? If they were within the framework of the Suspension Statute, then it would follow that the running of any statute of limitations applicable to such offenses would be suspended until three years after the termination of hostilities, as proclaimed by the President or by a concurrent resolution of the Congress. The bill of particulars furnished by the Government, marked Exhibit A–1, does not on its face enable one to state what was the ground for the disallowances of the credits which the defendant Taylor sought. It follows that evidence must be taken by the trial court to determine the nature of the acts committed by Taylor and charged by the Government to be in dereliction of his duty. The Government's case apparently will be to offer proof that Taylor committed fraud in relation to contracts made by the Government with private persons in construction and similar operations at a National Guard camp, and it will endeavor to prove that payrolls were padded, vouchers falsified, and endorsements of Government checks forged, and perhaps other irregularities. In the light of these contentions by the Government and what it expects to prove, it cannot be said that the wartime Suspension Statute does not apply.

In this view of the case it becomes unimportant to review the authorities cited in the able briefs submitted by both sides in order to determine the scope of the wartime Suspension Statute as contended by the Surety, which claims that it applies only to criminal acts, or whether, as contended by the Government, it embraces both criminal and civil acts. The pivotal question is whether what Taylor did falls within the scope of the wartime Suspension Act. That must be determined before a defense of the statute of limitations can be considered. It may be observed that it is of no moment for the defendant Royal Indemnity Company to argue that its liability is civil only. The measure of its liability is determined by the official bond which it executed with the principal. The obligation of the Royal Indemnity Company follows for any violation, whether criminal or civil, committed by the principal in failing to discharge the obligations imposed upon him as the result of appointment by the Governor of the State of New York, approved by the Secretary of War under Sec. 67 of the Act of Congress, approved June 3, 1916, entitled "An Act For making further and more effectual provision for the national defense, and for other purposes", amended

by subchapter III of the Army Appropriation Act approved July 9, 1918, as Property and Disbursing Officer of the United States for the purposes of accounting for all funds and property belonging to the United States in possession of the National Guard of the State of New York, and of receiving, disbursing and accounting for, as provided by law, of such sums of the annual appropriations for the support of the National Guard as may be paid over to the said principal under authority of the aforesaid Act, or other act of Congress.

Accordingly the motion of the defendant to dismiss the action on the ground that the statute of limitations bars the Government from prosecuting this action against the Surety is denied, but without prejudice to the renewal of the motion at the close of the Government's case at the trial of this action.

■ Both defendants accuse the Government of laches and urge dismissal of the action on this ground too. The decided weight of authority is that in an action brought by the Government to enforce a public right or protect a public interest, laches is not an available defense, United States v. Insley, 130 U.S. 263, 9 S.Ct. 485, 32 L.Ed. 968; United States v. Dalles, 140 U.S. 599, 11 S.Ct. 988, 35 L.Ed. 560; United States v. Stewart, 9 Cir., 121 F.2d 705, 713. In the last-named case it was said:

> "It is settled beyond debate that in suits brought by the government for the protection of public rights, unauthorized conduct on the part of its officers, or arrangements or agreements by them not having the sanction of law, do not constitute a defense or give rise to an estoppel. * * * But, on considerations having their roots in necessary public policy, laches on the part of its officers is not imputable to the government. United States v. Beebe, 127 U.S. 338, 8 S.Ct. 1083, 32 L.Ed. 121; United States v. Kirkpatrick, 9 Wheat. 720, 6 L.Ed. 199."

Other cases cited by the Government are Wood v. Carpenter, 101 U.S. 135, 25 L.Ed. 807; Russell v. Republic Production, 5 Cir., 112 F.2d 663; Central Railway Signal Co. v. Longden, 7 Cir., 194 F.2d 310; Chisholm v. House, 10 Cir., 183 F.2d 698; Hartford Empire Co. v. Glenshaw, D.C., 47 F.Supp. 711.

■ Finally it may be observed in this connection that in recognized equity practice, unless it can be shown that a defendant was prejudiced by the alleged laches of the plaintiff, the defense is not available.

■ Now as to the Government's cross-motion for summary judgment: The Government relies on §§ 2406 and 2407 of Title 28. They read as follows:

§ 2406 "In an action by the United States against an individual, evidence supporting the defendant's claim for a credit shall not be admitted unless he first proves that such claim has been disallowed, in whole or in part, by the General Accounting Office, or that he has, at the time of the trial, obtained possession of vouchers not previously procurable and has been prevented from presenting such claim to the General Accounting Office by absence from the United States or unavoidable accident."

§ 2407 "In an action by the United States against any person accountable for public money who fails to pay into the Treasury the sum reported due the United States, upon the adjustment of his account the court shall grant judgment upon motion unless a continuance is granted as specified in this section.

"A continuance may be granted if the defendant, in open court and in the presence of the United States attorney, states under oath that he is equitably entitled to credits which have been disallowed by the General Accounting Office prior to the commencement of the action, specifying each particular claim so rejected,

and stating that he cannot safely come to trial.

"A continuance may also be granted if such an action is commenced on a bond or other sealed instrument and the court requires the original instrument to be produced."

The Government contends that neither Royal nor Taylor made application for "credits" prior to the commencement of this action, and that therefore its motion for summary judgment must be granted.

On the basis of Smythe v. United States, 188 U.S. 156, 23 S.Ct. 279, 47 L. Ed. 425, and the cases cited therein it would seem clear that had Taylor failed to submit the proper vouchers and forms purporting to account for the funds disbursed, the Government would be entitled to summary judgment in the instant case. However, during the period in question, Taylor apparently complied with the procedural regulations regarding accounting procedures, and it was on the vouchers actually submitted that the Government bases its claim. In accounting terminology, a credit is something which offsets an opposing debit. Here the defendants claim that there are no legitimate debits.

The Government was put on notice by the vouchers of what the claim of Taylor is. In the instant situation apparently the alleged discrepancies in the principal's accounts, as Taylor claims, do not arise from the failure to account for money given him by the Government, but from an alleged use of said moneys inconsistent with the vouchers covering said funds.

In any event the vouchers constitute a claim for "credit", and since they were disallowed there was "disallowance" within the meaning of the statute. See United States v. Patrick, 8 Cir., 73 F. 800, error dismissed 1898, 18 S.Ct. 949, 42 L.Ed. 1216.

Whether the moneys were in fact so misused is a determination which cannot be made from a mere bookkeeping transcript, but requires evidence outside the scope of the records, and in the present circumstances defendants are not barred by §§ 2406 or 2407 from introducing such evidence. The records of the General Accounting Office may be admissible in evidence, but neither court nor jury is bound to follow the conclusions drawn from them when the basis for the entries is without the regular course of business of the Accounting Office. United ed States v. Jones, 8 Pet. 375, 33 U.S. 375, 8 L.Ed. 979.

Since there are disputed issues of fact, summary judgment for the Government cannot be granted.

Settle orders on notice.