THE UNITED STATES, PLAINTIFFS IN ERROR, *v.* ANDREW HODGE, JR. AND LEVI PIERCE.

In a suit upon a postmaster's bond, when treasury transcripts are offered in evidence, it is not necessary that they should contain the statements of credits claimed by the postmaster, and disallowed, in whole or in part, by the officers of the government.

Nor is it a reason for rejecting the transcripts as evidence, that the items charged in the accounts, as balances of quarterly returns, did not purport, on the face of said accounts, to be balances acknowledged by the postmaster, nor were supported by proper vouchers; but merely purported to be the balances of said quarterly returns, as audited and adjusted by the officers of the government. The objection applied, if at all, to the accuracy of the accounts, and not to their admission as evidence.

The basis of an action against a postmaster is his bond and its breaches; and not the transcripts nor the quarterly returns, which are made evidence by the statute.

THIS case was brought up, by writ of error, from the Circuit Court of the United States for the Eastern District of Louisiana.

It was the same case which was twice previously before the court, as reported in 3 How. 534, and 6 How. 279.

The facts and points of law are set forth in the opinion of the court.

It was argued by *Mr. Crittenden*, (Attorney-General,) for the plaintiffs in error, and *Mr. Johnson* and *Mr. May*, for the defendants in error.

The arguments of the counsel were so connected with an examination of, and reference to, the accounts, which were very voluminous, that it would be difficult to present an abstract of them.

Mr. Justice DANIEL delivered the opinion of the court.

This case comes before us upon a writ of error, to the Circuit Court of the United States for the Eastern District of Louisiana.

The plaintiffs in error instituted in the Circuit Court an action at law against the defendants, to recover the sum of twenty-five thousand dollars, the penalty of a bond executed by those defendants with W. H. Ker, and by which the obligors bound themselves jointly and severally for the faithful performance by Ker, of the duties of postmaster at New Orleans. The amount claimed by the United States, upon the statement of the account of the postmaster, at the Treasury Department, was, on the 18th of August, 1839, $70,126.72, nearly three times the penalty of the bond.

This cause was first tried in the Circuit Court in February, 1843, when, under a charge from the judge, the jury found a verdict for the defendants. A writ of error was sued out to the judgment of the court, but was afterwards dismissed here for the irregularity that it was signed by the clerk of the court and not by the judge. Vide 3 How. 534. Upon a new writ of error, the case was brought up to this court, was heard upon exceptions to the rulings of the judge, when the decision of the Circuit Court was reversed, and the cause remanded for trial upon a *venire facias de novo.* 6 How. 279.

In pursuance of the mandate of this court, the cause coming on to be finally heard in the Circuit Court on the 8th of May, 1851, the judge refused to allow any of the statements of the accounts with the postmaster or any of the transcripts from the Post-Office Department, relating to the accounts of the postmaster, or any of the monthly returns of that officer which were offered in evidence by the plaintiffs to be read to the jury, but excluded the whole of them, whereupon the jury found a verdict for the defendants. The case is now before us upon exceptions

to the rulings of the judge, and which exceptions are as follows:

"Be it remembered, that on the trial of this case, the attorney of the United States, after having read in evidence the bond sued on, offered in evidence the following certified transcripts of statement of accounts, copies of quarterly returns of W. H. Ker, late postmaster, and of the other papers pertaining to the account of the said postmaster, hereto annexed; to the introduction of which, as evidence, the defendants, by their counsel, objected, and the court sustained the objection, and refused to allow the said transcripts, or any of them, to be read in evidence to the jury; to which opinion and decision of the court, in excluding said evidence, the attorney of the United States excepts and prays that this bill of exceptions may be signed, sealed, and made matter of record, which is done accordingly.

"THEO. H. McCALEB, *U. S. Judge.*" [SEAL.]

By consent of the counsel of the United States, the court here states the grounds upon which it rejected the transcripts above mentioned as follows:

"1st. That the said statement of accounts, between the United States and said W. H. Ker [were] as audited and adjusted only, and did not purport to contain the statement of credits claimed by him, and disallowed in whole or in part by the officers of the government.

"2d. That the items charged to the said W. H. Ker in said accounts, prior to the year 1836, as balances of quarterly returns, do not purport on the face of said accounts to be balances acknowledged by him, nor are they supported by any proper vouchers, but merely purport to be the balances of said quarterly returns, as audited and adjusted by the officers of the government.

"3d. That the quarterly returns were not the basis of the action, and under the law could not be admitted as evidence before the jury, except as vouchers to sustain the account, (which) having been rejected by the court, the quarterly returns could not be given in evidence without it.

"THEO. H. McCALEB, *U. S. Judge.*"

In order to test the accuracy of the decision by which the competency and legal effect of the transcripts were passed upon by the court, and by which they were ruled out at the trial, some reference will be proper to the statutes by which those documents have been authorized and directed, and the mode of their application prescribed in the prosecution of claims on behalf of the government. By the 8th section of the act of Congress for the reorganization of the Post-Office Department, passed on the 2d of July, 1836, (vide Stat. at Large, vol. 5, p. 81,) it is provided,

" that there shall be appointed by the President, with the advice and consent of the Senate, an Auditor of the Treasury for the Post-Office Department, whose duty it shall be to receive all accounts arising in said department, or relative thereto, to audit and settle the same, and to certify their balances to the Post-master-General. He shall keep and preserve all accounts, with the vouchers, after settlement; he shall promptly report to the Postmaster-General all delinquencies of postmasters in paying over the proceeds of their offices, and shall close the accounts of the department quarterly, and transmit to the Secretary of the Treasury quarterly statements of the receipts and expenditures."

By section 15th, of the same statute, (vol. 5, p. 82,) it is further provided, " that copies of the quarterly returns of postmasters, and of any papers pertaining to the accounts in the office of the Auditor for the Post-Office Department, certified by him under his seal of office, shall be admitted as evidence in the courts of the United States ; and in every case of delinquency of any postmaster or contractor, in which suit may be brought, the said auditor shall forward to the Attorney of the United States, certified copies of all papers in his office tending to sustain the claim ; and in every such case a statement of the account, certified as aforesaid, shall be admitted as evidence ; and the court trying the cause shall be thereupon authorized to give judgment and award execution, subject to the provisions of the 38th section of the act to reduce into one the several acts establishing the Post-Office Department, approved March 3d, 1825." The 38th section of the act of 1825, here referred to, relates exclusively to the conditions on which the court may grant a continuance to defendants, beyond the return term, in suits against them. The 15th section of the act of 1836 goes on further to declare, " that no claim for a credit shall be allowed upon the trial, but such as shall have been presented to the said auditor, and by him disallowed in whole or in part, unless it shall be proved to the satisfaction of the court that the defendant is at the time of the trial in possession of vouchers not before in his power to procure, and that he was prevented from exhibiting to the said auditor by some unavoidable accident."

In the case before us there were exhibited, on the trial below, two general accounts or transcripts from the auditor for the Post-Office Department with the postmaster Ker. By the former of these accounts, the balance against the postmaster was stated at $93,347.78 ; by the latter the balance was reduced to the sum of $70,126.96. The difference in these amounts is explained by the facts, that at the time at which the first statement was made, the postmaster had failed to make his quarterly returns as

required by law, from the 1st of July to the 15th of November, 1839, and in consequence of that failure had been charged, in pursuance of the 32d section of the act of Congress of 1825, with double the estimated amount of postages receivable during that interval. Subsequently to this statement, the postmaster having rendered his account for the interval above mentioned, the actual amount due from him was charged against him in lieu of the duplicated estimate of receipts, and the balance against him thereby reduced to the sum of $70,126.96. The transcript of the statement thus corrected, was certified to the Circuit Court on the 11th of May, 1842, before the trial of the cause.

In addition to these general transcripts, there were certified by the auditor, and tendered in evidence by the United States, copies of the quarterly accounts or returns rendered by the postmaster from the quarter ending on the 30th of September, 1836, before the execution of his official bond sued on, up to the period of his removal; and on each of these quarterly returns or accounts the corrections or disallowances are noted. Proof is found in the record of notice to the postmaster of all these corrections in his returns, and the balances claimed on each of these returns, as corrected, were afterwards carried into the auditor's general statements, of which transcripts were furnished and offered in evidence at the trial. It would seem difficult to discover a plausible reason for the exclusion by the judge at circuit of the transcripts offered in evidence, as incompetent or irrelevant to the issue before him, and equally so to reconcile the reason assigned by his honor with the conclusion to which it has led him. In the first place, the language of the act of Congress is express and imperative, that the "Auditor of the Treasury for the Post-Office Department shall receive all accounts arising in the department relative thereto, and audit and settle the same, and certify their balances to the Postmaster-General." Vide sect. 8th of the act of 1836. And again, section 15th of the same act: "In every case of delinquency of any postmaster or contractor in which suit may be brought, the said auditor shall forward to the Attorney of the United States, certified copies of all papers in his office tending to sustain the claim, and in every such case, a statement of the account, certified as aforesaid, shall be admitted as evidence, and the court trying the cause shall be thereupon authorized to give judgment and award execution," &c. The competency of a statement by the auditor of all or any accounts with postmasters and contractors in suits against them, cannot, then, be questioned; the accuracy of such statements as to detail, is a wholly different matter, and is to be questioned or contested in the mode prescribed by other provisions of the

statute. The only qualification ever made of the principle above laid down, if indeed it can be properly considered a qualification, is to be found in the decisions of this court in the cases of the United States *v.* Buford, 3 Peters, 29, and of the United States *v.* Jones, 8 Peters, 375, in which it has been ruled, that transcripts from the treasury should not amount to proof of facts not coming within the regular relation existing between the department and persons with respect to whom such facts may have transpired; but this exception or qualification cannot apply to transactions falling strictly within the relation subsisting between the government and its agents, or rather it goes to affirm the operation of the statute in reference to such transactions. The utmost latitude which could be given to the decisions above mentioned, could not extend them to the entire character of the transcripts certified from the department as evidence, but must limit their effect to any portions or items of those transcripts which should be irregular, and not within the language or import of the statute, nor within the regular operations of the department.

The first reason assigned by the judge below for excluding the entire transcripts is, that they were presented as accounts between the United States and the postmaster Ker, as audited and adjusted only, and did not purport to contain the statement of credits claimed by him and disallowed in whole or in part by the officers of government. The obvious answer to this objection is, that the omission complained of did not render those documents any the less transcripts certified by the officer, nor destroy their competency as evidence under the statute. The objection, if it comprise either force or plausibility, is one strictly applicable to the completeness or sufficiency of the documents offered, and not to their competency or legality. An objection to the transcripts from the department, founded on the facts that they are only a statement and adjustment of the accounts between the United States and the postmaster, without containing the credits claimed and disallowed, is precisely an objection based upon the conformity of those documents with the law; for, by the 8th section of the act of 1836, the auditor is directed to receive all accounts arising in the department or relative thereto, to audit and settle the same, and to certify the balances therein to the Postmaster-General — and we may seek in vain for any provision in the statute which prescribes a particular form of stating the accounts or directing a list of the items not admitted by the department, but rejected as illegal, to be made parts of that general account, or transcript. A different proceeding would seem to have been the contemplation of the legislature, if we can gather its intention from the mode pointed out for preferring

and establishing credits, which, if denied and rejected by the government, it would seem strange to require should, by the act of that government which denied their existence, be held forth as a part of its own view of the transaction. But, as already observed, the reason assigned by the judge of the Circuit Court for ruling out the transcripts is one which could apply, in any view, only to the sufficiency or strength of the proof, and not to the competency or relevancy thereof. That reason too is directly in conflict with the 15th section of the act of 1836, which explicitly declares, irrespective of their force or efficiency, " that copies of the quarterly returns of postmasters, and of any papers pertaining to the accounts in the office of the auditor of the Post-Office Department, certified by him under the seal of his office, shall be admitted as evidence in the courts of the United States; and in every case of delinquency by any post-master or contractor, in which suits may be brought, the said auditor shall forward to the Attorney of the United States, certi-fied copies of all papers in his office, tending to sustain the claim, and in every such case a statement of the account, certified as aforesaid, shall be admitted as evidence." Under this ample provision of the statute not only the statements of accounts, but certified copies of every paper in the department pertaining to such accounts, are made competent evidence in the courts of the United States.

It will be observed, in this case, that in the certified transcripts from the department, every credit allowed to the postmaster upon the settlement of his account is given, and appears upon the face of the transcripts, so that the defendants have received the full benefit of all such credits ; and indeed the opinion of the judge below is not founded on the withholding of any of these credits from the postmaster, but it rests exclusively upon the fact of the absence from the face of the transcripts or general accounts of the alleged credits, whose correctness, or legal exist-ence even, was denied by the government, but which the defend-ant was still at liberty to assert in the mode prescribed by the statute. What obligation there could be upon the government to embody and to present to the court claims whose existence it repudiated and denied, we are unable to perceive. The language of the statute contains no such requisition, and none such ap-pears to fall within the meaning or objects of the law. Upon each of the quarterly returns of the postmaster the corrections made at the department are noted in a separate column, annexed thereto for the sole purpose of inserting those corrections ; the balances, as corrected, were thence transferred to the general ac-counts or transcripts, and the postmaster was informed of the corrections made, with the view to his sustaining the rejected

items by proofs, if in his power to do so.    The quarterly returns themselves remaining as to all the items they contained, precisely as made by the postmaster himself.

The question of the admissibility and competency of transcripts like those ruled out by the judge in the court below, has, in several instances received the examination of this court, and their competency and legality as evidence, in cases like the present, have been established upon the fullest consideration. In the case of Hoyt v. The United States, 10 Howard, 109, this question was raised, and in the investigation of it by this court, the cases of The United States v. Buford, 3 Peters, 29, The United States v. Jones, 8 Peters, 375, and The United States v. Eckford's Executors, 1 Howard, 250, were all examined and compared.    It is true that the cases above mentioned did not arise upon the statute regulating the Post-Office Department, but they involved the construction of the act of March 3d, 1797, the import of which, and indeed the language thereof, *mutatis mutandis*, are identical with those of the act of 1836, regulating the Post-Office Department. Vide Stat. at Large, 512. In the case of Hoyt v. The United States, the law is thus expounded by this court: " The counsel for the plaintiffs, (The United States,) in the court below, produced on the trial four treasury transcripts, containing a statement of the accounts of the plaintiff in error with the government, for the whole period of his term, and which resulted in the balance above stated.    These transcripts were objected to as not competent evidence against the defendant of the balance therein found due, within the meaning of the act of Congress providing for this species of proof.    The second section of the act provides that in every case of delinquency where a suit has been brought, a transcript from the books and proceedings of the treasury, certified by the register and authenticated under the seal of the department, shall be admitted as evidence, upon which the court is authorized to give judgment." This court further proceeds: " In the case before us the several items of account in the transcripts arise out of the official transactions of the defendant as collector, with the Treasury Department, and were founded upon his quarterly returns and other accounts rendered in pursuance of law and the instructions of the treasury.    They were substantial copies of these quarterly returns revised and corrected by the accounting officer, as they were received, and with copies of which the defendant had been furnished, in the usual course of the department; they present a mutual account of debit and credit arising out of the official dealings with the government in the collection of the revenue.    We can hardly conceive of a case, therefore, coming more directly within the act of Congress as expounded by the cases referred to." The court then deduces the

41 *

following conclusions : " As a general rule, therefore, every item of the account that can be the subject of litigation at the trial on the production of a transcript, must have been a matter of dispute at the Treasury Department, and of course presenting nothing new or unexpected to the parties. The court is of opinion, therefore, that the several treasury transcripts offered in evidence were properly admitted." We think, therefore, that the objection of the judge of the court below to the transcript offered in evidence, viz., that it did not contain on its face, as credits, items which were never admitted as credits, but were denied and rejected as such, was justified neither by the statute, nor by reason, nor custom in the statement of accounts.

The second cause assigned by the judge below for his rejection of the transcripts from the jury, is likewise one which applies, if at all, to the accuracy of the items in the account, and not to the competency of the entire transcripts as documents certified and attested in the mode prescribed by the act of Congress. The objection on the part of the judge, if it can be apprehended, seems to be this : That the quarterly returns of the postmaster entering into, and forming parts of the general transcripts, having been corrected at the department, the balances produced by such corrections cannot be regarded as the acknowledged amounts due by the postmaster, but, on the contrary, are the balances stated as due on said quarterly returns as audited and adjusted by the officers of the government. As we have already said, this objection applies entirely to the correctness of the items contained in the general account as stated, and cannot change the character of the transcripts as certified statements of the accounts audited and adjusted at the department, and as directed to be certified by the provisions of the statute. Moreover, these quarterly returns, which, so far as they go, are certainly admissions of the postmaster, are in nowise changed or affected, except by the disallowance of particular items, and by that very disallowance the officer is put in the position, and notified to sustain, if he can, his claims by legal proof. If he fail to do this, it can certainly furnish no reason why every other item of indebtment, admitted to be correct by both parties, should be withheld. We can perceive, then, no force in the second cause assigned by the judge below for the rejection of the transcripts.

The third cause assigned by the judge for rejecting the evidence tendered by the plaintiffs, has less of plausibility to sustain it than either which precedes it; and may be disposed of in a few words. This last cause begins with the affirmation, that the quarterly returns were not the basis of the action; next, it asserts that these returns could not, under the law, be admitted as evidence to the jury, except as vouchers to sustain the account,

The United States *v.* Hodge et al.

and then the conclusion attempted from these positions is, that the account, being rejected by the court, the quarterly returns could not be given in evidence without it. A somewhat curious example of assumption is given in this argument of the court, and of deduction in the conclusion as drawn therefrom. In the first place, it may be observed that neither the transcripts nor the quarterly returns, certified from the department, constituted, properly speaking, the basis of the action against the defendants — that basis is found in the official bond of the postmaster and his sureties, and in the acts or delinquencies of the officer. The proof of those delinquencies consisted in part as ordered by the statute, of the general transcripts, and of the quarterly returns certified and attested as that statute directed; they were both made evidence, and ought to have been so received, to avail as far as they regularly and properly might upon the issue made between the government and the defenddants. They both came within the literal descriptions in the statute of the " copies of quarterly returns of postmasters and of any papers pertaining to the accounts in the office of the Auditor of the Post-Office Department, which, when certified by him under his seal of office, shall be admitted in evidence in the courts of the United States." But the trenchant argument of the court below is simply this : I have cut off a portion of this statutory evidence, by the former part of my opinion, the residue shall be subjected to a like operation. We think that the decision of the Circuit Court, as a whole, and in the detail, as set forth by that court, is erroneous, and should be, as the same is hereby, reversed ; and we do remand this cause to the Circuit Court to be again tried subject to the principles laid down in this opinion.

### *Order.*

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the Eastern District of Louisiana, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Circuit Court in this cause be, and the same is hereby, reversed ; and that this cause be, and the same is hereby, remanded to the said Circuit Court, with directions to award a *venire facias de novo,* and to proceed therewith in conformity to the opinion of this court.