WATKINS v. UNITED STATES.

1. Pleading over without reservation to a declaration adjudged good on demurrer, is a waiver of the demurrer.

2. On a suit by the United States upon a marshal's official bond, the government may properly rest in the first instance, after having introduced evidence, in the form of duly certified transcripts of the adjustment of his accounts by the accounting officers of the Treasury. It need not show that the marshal had notice of the adjustment of his accounts or of the balance found against him in the transcript.

3. In order to allow a marshal in such a suit to set off a credit, it must be shown that the claim for credit has been legally presented to the accounting officers of the Treasury for their examination and been by them (except in certain cases) disallowed. And to be legally presented the claim should be presented by items, and with the proper vouchers

THE United States brought suit in the Circuit Court for Maryland against Watkins, late marshal of the United States, and his sureties, on the official bond of the said marshal. Judgment was given for the United States; and Watkins took a writ of error.

* *Supra,* 129.

*Mr. W. M. Addison, for the plaintiff in error; Mr. W. A. Field, Assistant Attorney-General, contra.*

Mr. Justice CLIFFORD stated the case and delivered the opinion of the court.

Persons accountable for public money, if they neglect or refuse to pay the sum or balance reported to be due to the United States, upon the adjustment of their accounts, are liable for the amount; and it is made the duty of the comptroller to institute suit for the recovery of the same, adding to the sum stated to be due the commissions of the delinquent and interest at the rate of six per cent. per annum from the time the officer received the money until it shall be repaid.[*] Transcripts from the books and proceedings of the treasury, certified by the register and authenticated under the seal of the department, are expressly declared to be competent evidence in every such case of delinquency, and all copies of bonds, contracts, or other papers relating to or connected with the settlement of any such account, when certified by the register to be true copies of the original on file, and authenticated under the seal of the department, may be annexed to such transcripts, and shall have equal validity and be entitled to the same degree of credit which would be due to the original papers, if produced and authenticated in court.[†] Judgment is required to be rendered in such cases at the return term, unless the defendant shall, in open court, make oath that he is equitably entitled to credits which had been submitted to the consideration of the accounting officers of the treasury, and been rejected previous to the commencement of the suit, specifying each particular claim so rejected, in the affidavit, and stating to the effect that he cannot safely go to trial without that evidence. Such an affidavit being filed, the court may grant a continuance to the next term, but not otherwise; and the fourth section of the act provides that, *in suits between the United States and individuals, no claim for a credit* shall be admitted upon trial, but such as shall

---

[*] 1 Stat. at Large, 512.                    [†] Ib 513.

appear to have been presented to the accounting officers of the treasury for their examination, and which have been by them disallowed in whole or in part, unless it is proved to the satisfaction of the court that the defendant is, at the time of the trial, in the possession of vouchers not before in his power to procure, and that he was prevented from exhibiting a claim for such credit at the treasury by absence from the United States, or some unavoidable accident.*

Pursuant to law the first-named defendant was, on the twenty-eighth of March, 1857, commissioned as marshal of the United States for the district of Maryland, to hold the office for the term of four years from the first day of April following, unless sooner removed by the President. On the seventh of April of that year he gave his official bond for the faithful performance of all the duties of his office, and the other two defendants named in the declaration were the sureties in that bond.

The present suit is an action of debt upon that bond, and the breaches assigned are as follows: (1.) That the marshal did not make true returns of all public moneys which came to his hands during the term of his office. (2.) That he did not render his accounts quarter-yearly to the proper accounting officers of the treasury, with the vouchers necessary to a correct and prompt settlement thereof, within three months after each successive quarter. (3.) That he did not pay into the treasury all the sums and balances of the public moneys reported to be due upon the adjustment of his accounts at the Treasury Department. (4.) That he did not pay into the treasury, or deposit to the credit thereof, all the surplus and emoluments of his office, which his half-yearly returns showed to exist, beyond the allowances which he was authorized to retain. Verdict and judgment were for the plaintiffs, and the defendants excepted to two of the rulings of the court, which give rise to the only questions of any considerable importance presented for decision in the record.

Apart from those questions, however, it is insisted by the

---

* 1 Stat. at Large, 515.

defendants that the court erred in overruling their demurrer to the declaration. They demurred specially to the several assignments of breaches in the condition of the bond, and the court overruled the demurrer as to the first three breaches, and sustained it as to the fourth, and both parties acquiesced in the ruling and decision of the court. Subsequently the defendants pleaded performance, concluding with a verification, and the plaintiffs replied, tendering an issue, which was joined, and upon that issue the parties went to trial.

Pleading over to a declaration adjudged good on demurrer, without any reservation, is a waiver of the demurrer, as held by the repeated decisions of this court.*

II. Evidence was then introduced by the plaintiffs to show that there was a balance due from the marshal under his official bond, and the amount of the same, which evidence consisted of the duly certified transcript of the adjustment of his accounts by the accounting officers of the treasury. Having introduced that proof the plaintiffs rested, and the defendants moved the court to instruct the jury that the plaintiffs were not entitled to recover upon that evidence, because it is not averred or proved that the marshal had any notice of the adjustment of his accounts, nor of the balance found against him in the certified transcript; but the court refused to instruct the jury as requested, and the defendants then and there excepted to the ruling of the court.

Officers and agents of the United States who receive public money, which they are not authorized to retain as salary, pay, or emolument, are required by law to send their accounts quarter-yearly to the proper accounting officers of the treasury, with the vouchers necessary to the correct and prompt settlement thereof, within three months at least after the expiration of each successive quarter, if resident within the United States, or within six months if resident within a foreign country.†

---

* Aurora City v. West, 7 Wallace, 92; United States v. Boyd, 5 Howard, 29; Clearwater v. Meredith, 1 Wallace, 42; Jones v. Thompson, 6 Hill, 621

† 3 Stat. at Large, 723.

Provision is also made that every officer or agent who shall offend against that enactment shall be promptly reported to the President, and that he shall be dismissed from the public service. Notice to the person required to account is not necessary, as the whole subject is regulated by law. Such officers and agents are required to render their accounts quarter-yearly, and when they do so they are charged with what they have received, and credited with what they have lawfully paid out or disbursed. Regulated as the whole matter is by law, they are presumed to have, and in general actually do have, full knowledge of the proceedings and of the result, and it is believed that no case of hardship arising from any surprise has ever occurred in the history of the department.*

III. By the evidence set forth in the second exception, it appears that the defendants claimed at the trial that a credit should be allowed, in the adjustment exhibited by the plaintiffs of the marshal's accounts, of four thousand three hundred and seventy-five dollars and seventy cents, for advances alleged to have been made by him in payment for work done and expenses incurred by him in taking the census, in pursuance of orders from the Secretary of the Interior. They offered the paper called the statement of differences, exhibited in the bill of exceptions, to show that the claim had been duly presented at the treasury and disallowed, and they also offered to prove that the disbursements were made as charged in the account. Objection was made by the district attorney to the admissibility of the evidence, because no account of the particulars of the claim was ever presented to the accounting officers of the treasury; and in making the objection he introduced the three accounts current set forth in the bill of exceptions. Both parties being heard, the court excluded the evidence, because it did not appear that the claim had been duly presented and disallowed, and the defendants excepted.

---

* Walton *v.* United States, 9 Wheaton, 651; Smith *v.* United States, 5 Peters, 292.

Marshals, like other officers, are required to render their accounts quarter-yearly to the accounting officers, with the vouchers necessary to the correct and prompt settlement thereof, within the time prescribed by law. In the case before the court it is not stated in the bill of exceptions, nor is it shown in the record, that any statement of items was furnished, nor that any vouchers were submitted to the accounting officers in support of the claim for credit now under consideration. Vouchers are required by the very words of the act of Congress, and it is very clear that the presentment of an account without items or vouchers would be a useless act. Without such evidences before the accounting officers there could not be any intelligent scrutiny of the claim, nor any decision which would be satisfactory to the claimant or to the public.

No evidence to prove a claim for credit can be admitted at the trial, " in suits between the United States and individuals," unless it be shown that the claim has been legally presented to the accounting officers of the treasury for their examination, and that it has been by them disallowed, except under certain special circumstances, which do not exist in this case. Independently of the express words of the act of Congress, the question has repeatedly been before this court, and has on every occasion been decided in the same way.

. The right of set-off did not exist at common law, but is founded on the statute of 2 George II, c. 24, s. 4, which in substance and effect provided that where there were mutual debts between the plaintiff and the defendant, . . . . . one debt may be set against the other, and such matter may be given in evidence under the general issue. Set-offs might, ever after the passage of that act, be made, in a proper case, between plaintiff and defendant, but it never extended to suits between the government and individuals, and since the decision in the case of *United States* v. *Giles*,* it has never been pretended that, in suits " between the United States

---

* 9 Cranch, 236

and individuals," any claim for credit can be admitted at the trial, unless it appears that the claim had previously been presented and disallowed, or was otherwise brought within the fourth section of the before-mentioned act of Congress. Whether the claim for credit is a legal or equitable claim, if it has been duly presented to the accounting officers and has been by them disallowed, it is the proper subject of set-off under that act, but it cannot be adjudicated in a Federal court unless it has been so presented and disallowed.* The rejection of such a claim by the accounting officers constitutes no objection to it as a claim for set-off, as it cannot be admitted in evidence unless it has been presented and disallowed, as required by the act of Congress.† Such claims as fall within that act are not specifically defined, and in view of that fact this court has held that the act intended to allow the defendant the full benefit at the trial of any credit, whether it arises out of the particular transaction for which he was sued or out of any distinct and independent transaction which would constitute a legal or equitable set-off, in whole or in part, of the debt for which he is sued, subject of course to the requirement of the act that the claim must have been presented to the proper accounting officers and have been by them disallowed.‡

Questions of set-off in the Federal courts arise exclusively under the acts of Congress, and no local law or usage can have any influence in their determination.§ Claims for credit cannot be admitted in suits between the United States and individuals unless they have been duly presented to the accounting officers of the treasury and have been by them disallowed, because it is so provided by an act of Congress.‖

---

* United States *v.* Wilkins, 6 Wheaton, 143.

† United States *v.* McDaniel, 7 Peters, 11; United States *v.* Ripley, 7 Id. 25.

‡ United States *v.* Fillebrown, 7 Id. 48.

§ United States *v.* Robeson, 9 Peters, 324; Gratiot *v.* United States, 15 Id. 370.

‖ United States *v.* Eckford, 6 Wallace, 488; United States *v.* Gilmore, 7 Id. 492.

Supported as the ruling of the court is by an act of Congress and by a course of decision extending through a period of three-quarters of a century, it can hardly be expected that it will be disapproved.

JUDGMENT AFFIRMED.