## UNITED STATES *v.* DUMAS.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF LOUISIANA.

No. 230. Submitted April 20, 1893. — Decided May 1, 1893.

An order of the Postmaster General, made in the exercise of the discretion given him by the act of June 17, 1878, 20 Stat. 140, c. 259, § 1, withholding commissions from a postmaster, and allowing a stated compensation in place thereof, in consequence of alleged false returns in the postmaster's accounts, is not final and conclusive in an action by the United States against the postmaster and the sureties on his bond, to recover moneys alleged to be illegally withheld; but is competent evidence on the part of the government, which may be explained or contradicted by the defendants.

THIS was an action brought by the United States to recover from Anna M. Dumas, and the sureties on her official bond, money alleged to have been illegally retained by her while postmaster at Covington, St. Tammany Parish, Louisiana.

It appears from the record that Anna M. Dumas was postmaster at the above-named place from January 1, 1881, to August 3, 1885, and that on October 1, 1883, a bond, in lieu of a former one, was executed. This bond was in the usual form, and was given to insure the faithful performance of her

duties as postmaster. The accounts rendered by her as post-master at the end of each quarter were examined September 1, 1886, by the Auditor of the Treasury for the Post Office Department. This examination resulted in a claim that she had made false returns of the business done at the post office at Covington, whereby she is alleged to have illegally retained from the government the sum of $709.89 in excess of her commissions for the period from October 1, 1883, to August 3, 1885, the time covered by the conditions of the bond last executed. A statement of accounts, certified to by the Auditor, to which is appended copies of papers pertaining to the accounts, is made a part of the record. A demand was made on June 8, 1887, upon her, and the sureties on her bond, to make good the deficit. Payment was not made, and the Postmaster General issued the following order:

"Order No. 161.]      POST OFFICE DEPARTMENT,
OFFICE OF THE POSTMASTER GENERAL,
WASHINGTON, D. C., *August* 11*th*, 1888.

"Being satisfied that A. M. Dumas, late P. M., Covington, St. Tammany Co., La., has made false returns of business at the post office at said place during the period from Jan. 1, 1881, to Aug. 3, 1885, thereby increasing her compensation beyond the amount [s]he would justly have been entitled to have by law; now, in the exercise of the discretion conferred by the act of Congress entitled 'An act making appropriations for the service of the Post Office Department for the fiscal year ended June 30, 1879, and for other purposes,' approved June 17, 1878, (section 1, chapter 259, Supplement to Revised Statutes,) I hereby withhold commissions on the returns aforesaid, and allow as compensation (in place of such commissions and in addition to box-rents) deemed by me, under the circumstances, to be reasonable during the period aforesaid, the rate of $72.50 per quarter from Jan. 1, 1881, to March 31, 1883, and $95 per quarter from April 1, 1883, to August 3, 1885, and the Auditor is requested to adjust her accounts accordingly.      (Signed)      WM. F. VILAS,
"*Postmaster General*."

At the trial of the cause in the court below the issue before the jury was whether Anna M. Dumas, as postmaster, did collect and receive in her official capacity from October 1, 1883, to August 3, 1885, in excess of the compensation fixed and allowed her in the order of the Postmaster General, and above all proper expenditures, the sum of $709.89. On this issue the plaintiffs in error requested the court to give the following instruction to the jury:

"If the jury are satisfied that plaintiffs have proven that the Postmaster General of the United States, being satisfied that Anna M. Dumas, late postmaster at Covington, Louisiana, had made false returns of business in said post office, withheld the commissions of said Anna M. Dumas, as such postmaster, and allowed her such compensation, in lieu of said commission, as he, the said Postmaster General, deemed reasonable; and if the jury further find that the amount sued for by plaintiffs in the cause is arrived at by reason of such withholding of said commissions and by the allowance to her of such compensation by said Postmaster General, then the jury must find for the United States."

This instruction the court refused to give, and charged the jury in regard to the order (No. 161) of the Postmaster General as follows: "This order was in its nature provisional. The adjustment is only *prima facie* evidence that the account is as stated therein."

The jury found a verdict for the defendants and judgment was entered accordingly. The bill of exceptions does not show the character of the evidence admitted or refused to be admitted. The plaintiffs sued out a writ of error, and assign as errors that the court below erred in refusing to instruct the jury as requested by the attorney of the United States, and in charging the jury as to the force and effect of the order of the Postmaster General, and the accounts of the postmaster as certified by the auditor.

*Mr. Assistant Attorney General Maury* for plaintiffs in error.

It can hardly be denied that Congress had the power to make the decision of the Postmaster General final and conclusive in cases like the present.

The argument of hardship has no relevancy, because every postmaster must be conclusively presumed to have accepted office with full knowledge of the laws and regulations which he is expected to obey.

Furthermore, a power of this kind in the Postmaster General is the same, in principle, as that vested in the architect, in almost every building contract, for the purpose of securing a speedy determination of questions that may arise between the contracting parties during the execution of the contract.

If the power claimed for the Postmaster General, under the act of 1878, were an isolated instance, a plausible argument might be deduced therefrom to support the ruling below, that Congress did not intend that anything done under the power should be more than provisional; but the statutes show that Congress does not hesitate to vest in executive officers summary power to make and execute decisions, without opportunity to show cause to the party to be affected, when the exigencies of the public service require prompt, decisive action.

By Rev. Stat. § 3962, the Postmaster General is empowered to make deductions from the pay of contractors " for failures to perform service according to contract and impose fines upon them for delinquencies," and where a contractor fails to perform a trip the Postmaster General may deduct from his pay as much as three times the price of the trip " if the failure be occasioned by the fault of the contractor or carrier."

By § 4010, the Postmaster General is authorized " to impose fines on contractors for transporting the mail, between the United States and any foreign country, for any unreasonable and unnecessary delay " in the departure of such mail, or the performance of the trip.

Without multiplying instances, reference may be made to § 3371 Rev. Stat. which, as it originally stood, provided that, where a manufacturer of tobacco, snuff, or cigars sold or removed for sale any such article without using the proper stamps, the Commissioner of Internal Revenue might, at any

time within two years, "upon such information as he can obtain," assess the proper tax and certify the same to the collector.

Certainly, then, there is nothing more summary in the power given by the act of 1878 than is contained in the instances above given, and it must be conceded that in those instances Congress intended the execution of the powers to be final and conclusive everywhere; in other words, that the fine ' imposed on a mail contractor by the Postmaster General, for delinquency, should be a valid charge in his accounts and that no court should review this action. And the same may be said of the collector's assessments under § 3371.

Congress, in like manner, intended that the action of the Postmaster General, under the power in question, should be binding on the courts as one of those "matters appertaining to the postal service" which, being "left to the discretion and judgment of the Postmaster General, the exercise of that judgment and discretion cannot in general be interfered with and the results following defeated." *United States* v. *Barlow*, 132 U. S. 271, 280.

In a word, this case would seem to be governed by the principle laid down by this court in *Martin* v. *Mott*, 12 Wheat. 19, 31, namely, that " whenever a statute gives a discretionary power to any person, to be exercised by him upon his own opinion of certain facts, it is a sound rule of construction that the statute constitutes him the sole and exclusive judge of the existence of those facts. . . . It is no answer that such a power may be abused, for there is no power which is not susceptible of abuse."

It would seem plain, therefore, that it was error in the learned judge to refuse to give any effect whatever in this case, to the order of the Postmaster General, and treat the case of the United States as without evidence on which the jury could act.

No appearance for defendants in error.

MR. JUSTICE JACKSON, after stating the case, delivered the opinion of the court.

It is insisted for the government that the order of the Postmaster General and the certified transcript of the accounts, which state the amount of the liability of Anna M. Dumas at $709.89, are final and conclusive. If this proposition is correct, and the order and the transcript constitute conclusive rather than *prima facie* evidence of the balance due the United States, then the instruction given was erroneous, and that requested should have been given.

The order of the Postmaster General was made, as it recites, in the exercise of the discretion conferred by the first section of the act of Congress approved June 17, 1878, 20 Stat. 140, c. 259, § 1, which provides "that in any case where the Postmaster General shall be satisfied that a postmaster has made a false return of business, it shall be within his discretion to withhold commissions on such returns, and to allow any compensation that under the circumstances he may deem reasonable." Now an order made in pursuance of this provision is certainly not conclusive upon a postmaster that his returns of business are actually false in fact, when by the same section of the act it is made a misdemeanor, punishable by fine or imprisonment or both, to make a false return to the Auditor for the purpose of fraudulently increasing his compensation. Neither can it be properly held that, when the Postmaster General is satisfied that a postmaster has made a false return of business, and exercises his discretion " to withhold commissions on such returns," his order in the matter is a final and conclusive determination that the postmaster is not entitled to any commissions as such, or that his compensation shall be absolutely fixed and limited by the allowance made. In a suit for his commissions or compensation, such an order withholding the one, and making a discretionary allowance as to the other, would certainly not conclude the postmaster. It was not the intention of Congress by this provision of the statute to confer upon the Postmaster General the discretion to deprive a postmaster of his commissions, or to vest him with authority to deny all commissions, and allow only such compensation as he might deem proper, as a final settlement and adjudication of the postmaster's rights in the premises.

By a preceding clause of the same section, it is provided "that when the compensation of any postmaster of this class [4th] shall reach one thousand dollars per annum, exclusive of commissions on money-order business, and when the returns to the Auditor for four quarters shall show him to be entitled to a compensation in excess of that amount under section seven of the act of July twelfth, eighteen hundred and seventy-six, the Auditor shall report such fact to the Postmaster General, who shall assign him to his proper class and fix his salary as provided by said section." A similar provision in the act of March 3, 1883, was before this court in the case of the *United States* v. *Wilson*, 144 U. S. 24, and it was held that a postmaster who is assigned by the Postmaster General to a particular class at a designated salary from a designated date was entitled to compensation at the rate thus fixed from such date without regard to his appointment by the President and confirmation by the Senate. The action of the Postmaster General in assigning a postmaster to his proper class and fixing his salary accordingly, under such provisions of the statute, is essentially different from the exercise of the discretion conferred of withholding commissions on such returns as the Postmaster General may be satisfied are false. "To withhold" commissions seems fairly to imply a temporary suspension, rather than a total and final denial or rejection of the same. If such withholding is not conclusive upon the postmaster, how can the allowance made, while the commissions are being withheld, be treated or regarded as a final and conclusive adjudication as to the compensation the postmaster is, or shall be, entitled to receive? The court below regarded the order in question as provisional in its character, and accordingly held, in substance, that it did not so conclusively fix and determine the commissions and compensation of the postmaster as to make the statement of her accounts based thereon conclusive against her and her sureties.

The contrary proposition urged on behalf of the United States involves the assertion that the falsity of the postmaster's returns is actually and finally established by the order of the Postmaster General, and that the accounts adjusted in accord-

ance therewith amount to more than *prima facie* evidence of the correctness of the balance claimed to be due from the defendants.

We think this contention of the government cannot be sustained, and that the ruling of the Circuit Court on the question was correct.

As to the competency, merely, of this evidence there can be no question, for it is provided by section 889, Revised Statutes, that " in any civil suit in case of delinquency of any postmaster or contractor, a statement of the account, certified as aforesaid, shall be admitted in evidence, and the court shall be authorized thereupon to give judgment and award execution, subject to the provisions of law as to proceedings in such civil suits."

The force and effect of such testimony has been several times considered by this court. Thus in *United States* v. *Eckford's Executors*, 1 How. 250, a statement of account by the officers of the Treasury was held not to be conclusive, but only *prima facie* evidence. So in *United States* v. *Hodge*, 13 How. 478, a Treasury transcript offered in evidence was held to be competent, but not conclusive. In *Watkins* v. *United States*, 9 Wall. 759, nothing more appeared in the shape of evidence than the certified transcript of accounts, and being held to be *prima facie* evidence, it warranted judgment for the government for the amount, therein shown to be due, in the absence of any testimony explaining or contradicting it. But that case does not hold that certified transcripts of accounts are conclusive upon the officer. So in *Soule* v. *United States*, 100 U. S. 8, 11, it was held that " Treasury settlements of the kind are only *prima facie* evidence of the correctness of the balance certified; but it is as competent for the accounting officers to correct mistakes and to restate the balance as it is for a judge to change his decree during the term in which it was entered. Errors of computation against the United States are no more vested rights in favor of sureties than in favor of the principal. All such mistakes in cases like the present may be corrected by a restatement of the account."

In the same line, it has been held by this court that the adjustment of accounts made by the auditor is *prima facie*

evidence, not only of the fact and the amount of the indebtedness, but also of the time when and the manner in which it arose; and that an objection to the statement does not lie to its competency, but to its effect. *United States* v *Stone*, 106 U. S. 525.

It would be manifestly unjust to compel the principal and sureties of a bond to pay an alleged indebtedness based upon a statement of account, when there are palpable errors upon the face of the statement; or when the defendants are prepared to show by affirmative evidence that there are in fact errors in the accounts. As already stated, the bill of exceptions contains nothing to show the character of the evidence introduced, by way of explanation or contradiction of the certified transcript of accounts presented by the government. The single question raised and presented by plaintiffs in error was whether the order of the Postmaster General, in connection with the certified statement of account, was final and conclusive on the defendants in error. We hold that it was merely evidence which, unexplained or uncontradicted, would have warranted a judgment in favor of the plaintiffs in error for the balance shown thereby to be due. But this evidence did not conclude the defendants, and, for aught that appears from the record, they may have explained or contradicted the statement, or shown it to be incorrect; and as it does not appear what the evidence was on this subject, we are unable to say that the judgment was wrong, there being no error in the charge of the court.

Nor is there anything said or decided in *United States* v. *Barlow*, 132 U. S. 271, 280, cited and relied on by plaintiff in error in conflict with this conclusion. In that case Mr. Justice Field, speaking for the court, said: "We admit that where matters appertaining to the postal service are left to the discretion and judgment of the Postmaster General, the exercise of that judgment and discretion cannot in general be interfered with, and the results following defeated. But the very rule supposes that information upon the matters upon which the judgment and discretion are invoked is presented to the officer for consideration, or knowledge respecting them is possessed

by him. He is not at liberty, any more than a private agent, to act upon mere guesses and surmises, without information or knowledge on the subject." This ruling of the court falls far short of holding that the transcript of accounts is conclusive upon the officer.

Our conclusion is that the order of the Postmaster General and the certified accounts produced by the government in the present case were only *prima facie* evidence of the balance claimed against the defendants in error, and that there was no error in the court below in so holding; and the judgment is accordingly *Affirmed.*