UNITED STATES v. PIERSON et al.

(Circuit Court of Appeals, Eighth Circuit. April 23, 1906.)

No. 2,099.

1. EVIDENCE—UNITED STATES OFFICERS—ACCOUNTING—TREASURY DEPARTMENT —PROCEEDINGS—CERTIFIED TRANSCRIPT—ADMISSIBILITY.

Where, in an action on the bond of a United States Indian agent, a transcript of the books and proceedings of the Treasury Department, certified and authenticated by the Register of the Treasury, as required by Rev. St. § 886 [U. S. Comp. St. 1901, p. 670], was offered in evidence, it was immaterial that it was not certified by the Secretary or the Assistant Secretary of the Treasury, as required by amendatory act March 2, 1895, c. 177, § 10, 28 Stat. 809 [U. S. Comp. St. 1901, p. 671], enacted after the transcript was filed as a part of the record, and in force at the time of the trial, but providing expressly that it related to certificates "thereafter made."

2. INDIANS—AGENTS—ACTION ON BONDS—EVIDENCE.

Rev. St. § 886 [U. S. Comp. St. 1901, p. 670] declares that, when suit is brought in any case of delinquency of a revenue officer or any person accountable for public money, a transcript from the books and proceedings of the Treasury Department, certified by the register and authenticated under the seal of the department, shall be admitted as evidence, and the court trying the cause shall be authorized to grant judgment and award execution accordingly. *Held* that, in the absence of countervailing evidence in an action on the bond of an Indian agent, the introduction of a duly certified transcript of the books and proceedings of the Treasury Department established a prima facie case in favor of the government entitling it to judgment.

3. UNITED STATES—OFFICERS—CREDITS—ACTIONS—BURDEN OF PROOF.

1 U. S. Comp. St. 1901, p. 695, § 951, provides that, in suits between the United States and individuals, no claim for a credit shall be admitted on trial, but such as shall appear to have been presented to the accounting officers of the treasury for their examination, and by them disallowed in whole or in part, unless it shall be proved to the satisfaction of the court that the defendant is in possession of the vouchers not before in his power to procure, and that he is prevented from exhibiting a claim for such credit at the treasury by absence from the United States or some unavoidable accident. *Held*, that a public officer, in order to obtain credits in his accounts for the United States, must claim such credits, ask their allowance, and, if rejected, the burden is on him to establish the same.

**4.** INDIANS—·ACTION ON AGENT'S BOND—TRANSCRIPT FROM TREASURY BOOKS—PROCEEDINGS.

In an action on a bond of a United States Indian agent, a transcript from the books and proceedings of the Treasury Department is not conclusive of the claims of the government; the court being authorized to allow disallowed items on facts either appearing on the face of the transcript or established by extraneous evidence.

**5.** EVIDENCE—OFFICIAL RECORDS—TRANSCRIPT—CONTENTS.

In an action on an Indian agent's bond, a transcript of the books and proceedings of the Treasury Department was admissible, though it contained some items of credit or debit concerning which it was not competent evidence.

[Ed. Note.—For cases in point, see vol. 20, Cent. Dig. Evidence, § 1291.]

**6.** SAME—RULINGS OF TREASURY DEPARTMENT—GROUNDS.

Where, in an action on the bond of an Indian agent, the transcript of the books and proceedings in the Treasury Department contained a debit and credit statement of the account and a showing of the items in dispute, it was not objectionable because it also contains explanatory memoranda showing the grounds of the rulings of the accounting officers concerning the items rejected, and, in some instances, the evidence on which they relied.

**7.** INDIANS—INDIAN AGENT—RECEIPT OF MONEY—EVIDENCE.

In an action on the bond of a United States Indian agent, a transcript of the books and proceedings of the Treasury Department is not evidence of the receipt by such agent of moneys that did not come to his hands through the ordinary channels of the department.

**8.** SAME—FUNDS—DISTRIBUTION.

Where, because the members of one of two bands of Indians had committed certain depredations, the federal authorities withheld from them the greater portion of the annuity to which they would otherwise have been entitled, and the Indian agent was instructed to disburse to each member of the offending band $1.93, and to each member of the other band $11.20, such agent had no authority to divide all of the money equally between the members of both bands, because of their threatening attitude, with the consent of the members of the unoffending band, and his act in so doing rendered him and his sureties liable as for a diversion of the funds.

**9.** SAME—PENALTIES—LIABILITY OF SURETY.

Act Cong. March 1, 1883, § 8 (22 Stat. 451), provides that any officer, who knowingly presents any voucher, account, or claim for approval or payment or to secure credit in any account with the United States relating to any matter pertaining to the Indian service, which contains any material misrepresentation of the fact, shall not be entitled to any part of the voucher, account, or claim. *Held,* that such section was in the nature of a penalty and was unenforceable against sureties of an Indian agent on a bond conditioned to secure his faithful disbursement of all public moneys and to honestly account without fraud or delay for all public funds and property.

Hook, C. J., dissenting in part.

In Error to the District Court of the United States for the District of Colorado.

This was an action upon the bond of Elisha W. Davis as Indian agent, conditioned that he carefully discharge the duties of such office and faithfully disburse all public moneys and honestly account without fraud or delay for the same and for all public funds and property coming into his hands. Although named as a defendant, Davis died before the action was commenced, and it proceeded against his sureties. At the conclusion of the evidence for the gov-

ernment the District Court directed the jury to find a verdict for the defendants. This writ of error is to review the judgment rendered upon the verdict so returned.

Earl M. Cranston (George P. Steele, on the brief), for the United States.

Edmund F. Richardson (Horace N. Hawkins, on the brief), for defendants in error.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

HOOK, Circuit Judge. The question lying at the threshold of the case is as to the admissibility in evidence, on behalf of the government, of a transcript from the books and proceedings of the Treasury Department, which was certified and authenticated as required by section 886 of the Revised Statutes [U. S. Comp. St. 1901, p. 670]. That section, so far as it need be quoted, provides:

"When suit is brought in any case of delinquency of a revenue officer or any person accountable for public money a transcript from the books and proceedings of the Treasury Department, certified by the register and authenticated under the seal of the department * * * shall be admitted as evidence and the court trying the cause shall be authorized to grant judgment and award execution accordingly. * * *"

This was the law in 1888, when the certificate to the transcript was made, and also in 1892, when the transcript was filed in the cause as a bill of particulars by way of supplement to the original complaint. But by the act of March 2, 1895, c. 177, § ·10, 28 Stat. 809 [U. S. Comp. St. 1901, p. 671], it was provided that thereafter such certificates should be made by the Secretary or an Assistant Secretary of the Treasury instead of the Register; and this amendatory act was in force in 1903, when the transcript was offered in evidence at the trial. Various objections were made by the defendants to the admission of the transcript, and among them was one directed to the certification because it was not in accordance with the law then in force. The court sustained the objections generally, except so far as the transcript was from the books and proceedings of the Treasury Department to which extent it was admitted in evidence. The ruling took this form because it was claimed that there was much extraneous matter in the document offered. It appears therefore that the specific objection on account of the certificate was overruled. This was right. The certificate when made was made by the proper officer. The amendatory act of 1895, by its express terms related to certificates thereafter made, and it was not intended to destroy the effect of one previously made as required by law and attached to a transcript which had been filed and had become a part of the record in a pending cause.

After the admission of the transcript, so far as it related to the books and proceedings of the department, the attorney for the government offered additional evidence to establish its case as to each disputed item in the account, but as he proceeded the court eliminated the items until at the end it excluded in effect, though not in terms, the entire transcript and directed a verdict for the defendants. This

was error. The transcript itself was sufficient proof, in the absence of countervailing evidence, to entitle the government to a verdict upon many of the items in controversy.

The effect of transcripts from the books and proceedings of the Treasury Department, certified in accordance with the act of Congress, as evidence in actions against officers accountable for public moneys and their sureties has been recognized many times. Such a transcript is not, as counsel for the defendants seem to contend, proof of such a low order that it may be disregarded by the court. A transcript, when in proper form, properly certified, and admitted in evidence, makes a prima facie case for the government, and, although the statute says "that the court trying the cause shall be authorized to grant judgment and award execution accordingly," it is not meant that whether the court shall do so or not is left in any degree to its discretion. If the prima facie case made by the transcript is not overthrown, it is error to refuse to grant judgment. The case is then like any other in which a plaintiff has made a prima facie showing. Moses v. United States, 166 U. S. 571, 597, 17 Sup. Ct. 682, 41 L. Ed. 1119; United States v. Dumas, 149 U. S. 278, 285, 13 Sup. Ct. 872, 37 L. Ed. 734; United States v. Stone, 106 U. S. 525, 530, 27 L. Ed. 163; Soule v. United States, 100 U. S. 8, 11, 25 L. Ed. 536; United States v. Gaussen, 19 Wall. 198, 22 L. Ed. 41; Watkins v. United States, 9 Wall. 759, 19 L. Ed. 820; Bruce v. United States, 17 How. 437, 15 L. Ed. 129; United States v. Jones, 8 Pet. 375, 8 L. Ed. 919; Smith v. United States, 5 Pet. 292, 8 L. Ed. 130; United States v. Eggleston, 4 Sawy. 199, 25 Fed. Cas. No. 15,027.

Section 886 of the Revised Statutes, providing for the use in evidence of transcripts from the books and proceedings of the Treasury Department, was drawn from the first two sections of the act of March 3, 1797, entitled "An act to provide more effectually for the settlement of accounts between the United States and receivers of public money." 1 Stat. 512. The fourth section of this act is a part of the same machinery. It provides:

"That in suits between the United States and individuals, no claim for a credit shall be admitted, upon trial, but such as shall appear to have been presented to the accounting officers of the treasury, for their examination, and by them disallowed, in whole or in part, unless it should be proved, to the satisfaction of the court, that the defendant is, at the time of trial, in possession of vouchers not before in his power to procure, and that he was prevented from exhibiting a claim for such credit at the treasury, by absence from the United States, or some unavoidable accident."

These provisions still remain embodied in the law (1 U. S. Comp. St. 1901, § 951, p. 695), and, as applied to cases like the one before us, their plain meaning is that, when public funds have come into the hands of a public officer, he can only acquit himself of responsibility therefor in the manner prescribed, and that his accounts with the government cannot be settled and adjusted upon the mere presumption of a due performance of his official duty. He must claim his credits and ask for their allowance, and when, so claimed, they are rejected by the accounting officers of the Treasury, a transcript from the books and proceedings of the department showing that fact is prima facie

evidence against him.   The burden is then upon him, and if he does not discharge it judgment must go against him.   Watkins v. United States, 9 Wall. 759, 19 L. Ed. 820.   These rules are necessary for the proper and efficient discharge of the public business, and they have been constantly enforced for more than a century.

But a transcript from the books and proceedings of the Treasury Department is not conclusive of the claims of the government.   Items of credit to the officer whose accounts are in question which have been rejected by the accounting officers may be allowed by the court trying the case, and the grounds for such allowance may appear upon the face of the transcript itself, or they may be established by extraneous evidence.   A transcript offered in evidence is not to be excluded merely because there appear therein some items of credit or debit concerning which it is not competent evidence.   United States v. Hodge, 13 Howe, 478, 483, 14 L. Ed. 231.

Again, to be admissible the transcript should not be a mere statement of resultant balances.   Both sides of the account, debit and credit, should be given, and it is proper to include therein a showing of the differences or items in dispute.   Moses v. United States, 166 U. S. 571, 599, 17 Sup. Ct. 682, 41 L. Ed. 1119; United States v. Gaussen, 19 Wall. 198, 22 L. Ed. 41; Hoyt v. United States, 10 How. 109, 133, 13 L. Ed. 348.   The transcript which appears in the record before us answers to these requirements, and it compares favorably with the one set out in the statement preceding the opinion in United States v. Gaussen, supra, and which met the approval of the Supreme Court. One feature of it, however, requires special mention:   As part of the statement of differences there appears in much detail an account of the grounds of the rulings of the accounting officers in rejecting the various items in dispute and in some instances the evidence upon which they relied.   While this may be unnecessary the defendants are not prejudiced thereby, for it does not add to the evidential force or effect of the action of the accounting officers in rejecting the items.   If all of this explanatory memoranda were eliminated from the transcript, there would still be left the statement of the account, of the differences in dispute, and the fact of the adverse rulings of the accounting officers.   And a transcript showing these alone would still be prima facie evidence in favor of the government.   Indeed the explanatory statements to which the defendants object are of advantage to them, in that they definitely advise them of what they have to meet and also enable them to present to the court the question of law, whether, admitting the facts recited to be true, the rejection of the items by the accounting officers was justified.   They may also furnish evidence for the defendants that the items to which they relate have been duly presented and disallowed and are therefore proper subjects for investigation by the court.   United States v. Patrick, 20 C. C. A. 11, 73 Fed. 800.

The transcript is not proper evidence of the receipt, by an officer, of moneys that did not come to his hands through the ordinary channels of the department.   Bruce v. United States, 17 How. 437, 440, 15 L. Ed. 129; United States v. Hodge, 13 How. 478, 483, 14 L. Ed.

231; Hoyt v. United States, 10 How. 109, 132, 13 L. Ed. 348, 576; United States v. Jones, 8 Pet. 376, 8 L. Ed. 979; United States v. Buford, 3 Pet. 12, 29, 7 L. Ed. 585. Should no other evidence than the transcript be produced by the government, this rule will require the exclusion of the debit for moneys alleged to have been received by the Indian agent for pasturage and not admitted or included in his own accounts, as well as such other of the disputed items as are similarly circumstanced.

There was sent to the Indian agent a sum of money for distribution as an annuity among two different bands of Ute Indians. The duty thus imposed upon him was one with which it was proper to charge him. It was within the general scope of his office and germane to the other duties pertaining to it. National Surety Co. v. United States, 63 C. C. A. 512, 129 Fed. 70. The members of one of these bands of Indians had committed certain depredations, and for that reason the authorities at Washington withheld from them the greater portion of the annuity to which they would otherwise have been entitled. Under the instructions he received the Indian agent should have given to each member of the offending band $1.93, and to each member of the other band $11.20. But, owing to the threatening attitude of the Indians discriminated against, the agent divided all of the money equally between the members of the two bands, took vouchers showing that he had complied with his instructions, and submitted them with his reports. The Indians who were thus deprived of a portion of the annuity belonging to them consented to what was done, but their consent was ineffectual for any purpose whatever. Some of them were minors, and all of them were wards of the government. When the Indian agent received the funds for disbursement the duty devolved upon him to disburse them in accordance with the law, and the rules, regulations, and instructions of the department. He was wholly without power to exercise his own discretion or to act upon his own judgment as to the propriety of a different plan of distribution. It was not competent for him to modify the course which the department had prescribed, and he and his sureties became liable for the diversion of the funds from the designated recipients.

One other matter requires notice. By section 8 of the act of March 1, 1883 (22 Stat. 451), it is provided that any officer who knowingly presents any voucher, account, or claim for approval or payment or to secure credit in any account with the United States relating to any matter pertaining to the Indian service, which contains any material misrepresentation of fact, shall not be entitled to payment or credit for any part of the voucher, account, or claim. This provision is renewed by section 8 of the act of July 4, 1884, c. 180, 23 Stat. 97 [U. S. Comp. St. 1901, p. 1420]. Under this authority various items in the account of the Indian agent were wholly disallowed by the accounting officers, although they contained in part actual disbursements for which he would have been entitled to credit had there been no misrepresentation. And the question now arising is whether the rejection of the entire items is binding upon the defendant sureties, or

whether they are entitled to credit for those parts thereof which represent actual legal disbursements. The writer of this opinion is of the view that, even though the disallowance of an entire item upon the ground specified in the statute be considered in the light of a penalty for misrepresentation of fact, nevertheless it operates as well against the sureties as against their principal—that no discrimination can be made between them in the measure of recovery. The condition of the bond which they executed was that their principal should "faithfully disburse all public moneys and honestly account without fraud or delay for the same and all public funds and property," and one of the legal consequences of a default in this condition was prescribed by a pre-existing statute. Macintosh v. Likens, 25 Iowa, 555; Pelzer v. Steadman, 22 S. C. 279; Gilbert v. Isham, 16 Conn. 525; Eastin v. School Directors, 40 La. Ann. 705, 4 South. 880; Breeding v. Jordan, 115 Iowa, 566, 88 N. W. 1090.

The majority of the court, however, are of the opinion that a forfeiture of the lawful portion of an item because of misrepresentation as to the remainder, being purely by way of a penalty, cannot be enforced against the sureties (Salomon v. People, 89 Ill. App. 374, affirmed 191 Ill. 290, 61 N. E. 83); and such therefore is the rule that must be applied. Under this rule, for example, the sureties will be entitled to credit for that portion of the $6,569.75 which the agent paid to the right Indians, but to no credit for that portion of this sum which he paid to the wrong Indians. The foregoing principles we think cover the entire case in a general way, and dispense with the necessity of a minute consideration of the various items in controversy.

The judgment of the District Court is reversed, and the cause remanded for a new trial.